CINCINNATI (ROGERS v.). See Case No. 12,008.

CINCINNATI & C. A. L. R. CO. (PULLAN v.). See Cases Nos. 11,461 and 11,462.

CINCINNATI COAL CO. (JONES v.). See Case No. 7,458.

---

## Case No. 2,719.

### In re CINCINNATI ENQUIRER.

[4 Cin. Law Bul. 904.]

Circuit Court, S. D. Ohio. Nov. 24, 1879.

#### RIGHT OF CITIZEN TO INSPECT COURT RECORDS.

[1. A citizen of the United States has not an unlimited right, as such, to inspect and examine all the records and papers belonging to the circuit and district courts, but only, under the express provision of the act of 1848, those books containing the docket or minute entries of the judgments and decrees of the court.]

[2. A petition, alleging the refusal by the clerk of the court of leave to inspect "books containing the docket and minute entries, judgments, and decrees" of the district and circuit courts, prayed an order that "the judgment and decrees of the said court, including the fee books and other books containing the public records and orders of said court," be open for inspection of petitioner. It was supported by an affidavit alleging that petitioner's agent was refused permission to examine the "public records, fee books, and decrees of said court." Held, that notwithstanding that the prayer was broader than the allegations of the petition, and that neither was supported by the affidavit, the petition was good on general demurrer, for petitioner was entitled to part of the relief prayed.]

In the matter of the application of the Cincinnati Enquirer Company for an order allowing them to examine the books and records of the court. Ex parte on demurrer to the petition.

Before BAXTER, Circuit Judge, and SWING, District Judge.

SWING, District Judge. This is a petition filed by Mr. John R. McLean and the Enquirer Company, in which they set out that "heretofore, to-wit, on the 7th day of November, 1879, application was made to Thomas Ambrose, clerk of this court, by J. H. Woodard, an agent of said Enquirer Company, for leave to inspect during office hours books containing the docket and minute entries, judgments, and decrees of the said district court and the United States circuit court, and that the said clerk then and there refused the said J. H. Woodard the privilege to so inspect or examine the books aforesaid. Your applicants would, therefore, respectfully ask the court to order that the judgments and decrees of said court, including the fee books and

other books containing the public records and orders of said court, be open to the inspection of the said J. H. Woodard, agent of the said Enquirer Company and of said John R. McLean, under such regulations as to the court may seem proper." With this application there is filed the affidavit of one James H. Woodard, in which he says that he is employed by the Cincinnati Enquirer Company, a corporation doing business under the laws of the state of Ohio, and that acting under the orders of John R. McLean, the manager of said corporation, he made personal application to Thomas Ambrose, clerk of the United States circuit and district courts, for permission to examine the public records, fee books, and decrees of said court, and permission was refused him by the said Thomas Ambrose, clerk as aforesaid, and said application was renewed on this day and date by him as a citizen having the right to inspect said books, decrees, and minutes, and was again refused. To this application there is filed by the clerk, in the form of a demurrer, that the petition does not contain facts enough to entitle the applicants to the order they pray for.

This proceeding, in one sense, at least, is adversary in its character, and yet it is based upon the alleged refusal by an officer of this court for permission to exercise an alleged right of the petitioners. The right which they allege was refused was that of having one J. H. Woodard to inspect, during office hours, books containing the docket and minute entries, judgments, and decrees of the district court and the United States circuit court. This right is based solely upon the ground that John R. McLean is a citizen of the United States, and that the Enquirer Company is located in the United States. It is not claimed for either that they have any interest in the docket or minute entries, judgments, and decrees recorded in said books. If the prayer of the petitioners prayed simply for the right which they claimed an officer of this court had deprived them of, there would be no difficulty in determining the case. But such is not the fact. They pray for an order that the judgments and decrees of said court, including the fee books and other books containing the public records and orders of said courts, be open for the inspection of one J. H. Woodard. It will be seen at a glance that their prayer is greatly beyond what they alleged they were not permitted to examine. That was the books containing the docket or minute entries of the judgment and decrees, but this is not only that the judgments and decrees may be examined, but that all other books containing the public records and orders of the court shall be opened to their inspection. So much for the allegations of the petition itself.

But let us see how the allegation of the right which they allege they were deprived of is supported by the affidavit which has been filed. The petition says that the application was for leave to inspect the books containing the docket and minute entries, judgments, and decrees. The affidavit of the man Woodard is that he applied for permission to examine the public records, fee books, and decrees, showing clearly and conclusively that the petition is not supported by the affidavit. Such is this application as shown from the papers filed. But it is claimed that notwithstanding the variance between the allegations of the petition and the prayer, and the variance between the proof and allegations, that petitioners are entitled in law to the order prayed for; that they are so entitled by the statutes of the United States, or, if not by them, that they are by the common law entitled to it; that all the books and papers of a court of record are subject to the examination and inspection of any citizen, whether they have any personal interest in them or not; that it is the high and indefeasible right, at any time he pleases during working hours, to make such inspection. If this is true, it is very clear that the petitioners are entitled to the order prayed for. This doctrine is a new and strange one, and certainly finds no support in any adjudication which I have been able to find, and I am very certain none can be produced sustaining any such proposition. But the very formation, purposes, and duties of a court forbid such an idea. The court is composed of judge, ministerial and executive officers, together with the attorneys and members of it. To this party so organized is committed for determination the highest interest of the citizen, in his property, his reputation, and his person. And a careful record of every step which may be taken in relation to either must be carefully recorded; every paper connected with any proceeding affecting any one in either of these must be carefully filed and preserved. The title to the entire property of the whole country passes through the courts of this country almost in every half century. They are the repositories of the rights of persons and of property, and in many cases the only evidence in either, and the law imposes upon the court the duty of their secure and careful protection and preservation; a protection and preservation which would be greatly jeopardized if every citizen of the United States, at his pleasure and will, should be permitted to examine and inspect them in his own way. Not only is such an idea in opposition to the formation, purposes, and duties of the court, but it is clearly in opposition to the views of the highest judicial and legislative branches of this government. At a very early day, the supreme court of the United States adopted a rule, known as the fourth rule, which provides that "All motions, rules, orders, and other proceedings made and directed at chambers, or on rule days at the clerk's office, whether special or of course, shall be entered by the clerk in an order book,

to be kept at the clerk's office, on the day when they are made and directed, which book shall be open at all office hours to the free inspection of the parties in any suit of equity and their solicitors." If the supreme court believed that all the books and records belonging to the court were open to the inspection of every citizen of the United States, why did they enact such a rule? Or why did they limit the right of inspection to parties or their solicitors? This rule itself is the most convincing proof that no such right as claimed by the petitioners, was supposed by the judges of the supreme court to have existed. But it is claimed by the learned counsel for the petitioners that there is a difference between suits in equity and at law; that there could hardly be a case in equity in which the government could have any interest. It is not perceived by the court upon what reason there can exist any difference in the care and custody of the records and papers in equity causes and actions at law, but learned counsel are mistaken in regard to the interest of the government in equity causes. The records of this court show numerous causes in equity in which the government of the United States is plaintiff. But it is said, if that is so, that the citizen is a party in interest, and would have a right to look into the records. In some general political sense it may be true that the citizen is a party in interest in every suit prosecuted in the name of the United States; but in a legal sense he is not such a party in interest as is contemplated by this rule.

That congress entertained the same view is abundantly shown by its acts. In 1848 it enacted a law providing that "all books in the office of the clerks of the circuit and district courts containing the docket or minutes of the judgments or decrees thereof, shall during office hours be open to the inspection of any person desiring to examine the same without any fees or charge therefor." [9 Stat. 292.] If congress believed the right already existed, why did they think it necessary to create such right by special legislation? Or if they believed it ought to exist, why did they limit the right to particular books, such only as contained the docket or minutes of the judgments or decrees? And again, by the act of February, 1875 [18 Stat. 333], congress provided "that the account and vouchers of clerks, marshals, and district attorneys shall be made in duplicate to be marked 'Original' and 'Duplicate,' and it shall be the duty of the clerk to forward the original accounts and vouchers of the officers above specified, when approved, to the proper accounting officers of the treasury, and to retain in his office the duplicate, which shall be open for public inspection at all times." If the public had the right already to inspect such papers, why did congress deem it necessary to create such a right by the passage of this act?

It is, therefore, very clear to my mind that the unlimited right of a citizen of the United States to inspect and examine all the records and papers belonging to the court does not exist. The right to examine certain records and papers does exist. It exists as to the books containing the docket or minute entries of the judgments and decrees of the court, and these the petitioners allege that they have been refused by an officer of this court. The prayer of the petition is not in accordance with this averment, and the affidavit is different from both. This petition, however, must be governed by the rules of pleading in other cases, so far as the demurrer is concerned. If the party is entitled to any part of the relief he prays for, a general demurrer must be overruled. This application for the interference of the court is based upon the allegation that the petitioners have been deprived of a right given them by the law by an officer of the court. This is denied on behalf of the officer by two members of the bar, who are officers also of the court, and who appear in this proceeding on behalf of the clerk. This is a charge which the court is interested in having examined, and the truth or falsity thereof established. The demurrer therefore will be overruled, but no order will be made until a further hearing of the matter is had before the court, when we shall finally determine whether the petitioners are entitled to the order as prayed for.

To the above opinion, BAXTER, Circuit Judge, added afterwards, concurring: "The arguments and the discussion relate to the legal rights of the citizen to inspect the public record of the courts. I do not take issue with any principle announced by the district judge in reference to the questions there involved. But in consultation we agree that this is not a case for the application of technical law. The examination proposed professes to be in the public interest. No injury can result to any one from such examination."

CINCINNATI ENQUIRER (GIBSON v.). See Cases Nos. 5,391 and 5.392.

CINCINNATI GAS-LIGHT & COKE CO. (STILWELL & BIERCE MANUF'G CO. v.). See Case No. 13,453.

CINCINNATI, H. & D. R. CO. (SMITH v.). See Case No. 13.025.

CINCINNATI, PERU & CHICAGO R. CO. (DUNHAM v.). See Case No. 4,148.

CINCINNATI, W. & Z. R. CO. (THOMPSON v.). See Case No. 13.950.

CINQUE (UNITED STATES v.). See Case No. 14,794.