STATE OF FLORIDA, *ex rel.* E. T. DAVIS AND H. E. GRAHAM
  AS PARTNERS DOING BUSINESS AS THE WEST FLORIDA AB-
  STRACT AND REALTY COMPANY, PLAINTIFF IN ERROR, V.
  A. M. MCMILLAN, DEFENDANT IN ERROR.

PUBLIC RECORDS—RIGHT OF PUBLIC TO EXAMINE AND
                  '         MAKE ABSTRACTS OF. ·

1.  Under the provisions of our statute the public generally, in-
    cluding any person or firm who may be engaged in the en-
    terprise of compiling a complete set of abstract books of
    the titles to all the real estate in a county, have the con-
    tinuous right at all reasonable hours and times, by them-
    selves or their agents, to inspect and make extracts from
    any and all of the public records in the offices of clerks
    of the Circuit Courts; and where such inspection and ex-
    ·tracting is done by the parties themselves or by their
    agents or assistants, without any service or assistance
    from the clerk or his deputies in connection therewith
    other· than that general supervision and watchfulness as
    to what is going forward in his office that is necessary to
    the safe keeping of such records, then such clerk is not
    entitled to any fees or compensation for such inspection
    and extracting.   (CARTER, J., dissents.)

2.  The right of inspection of, and making extracts from, the
    public records in the office of the clerk of the  Circuit
    Court, given to the public by our statute must be exercised
    by each individual in a reasonable and orderly manner at
    reasonable hours and times, and with due· regard to the

official rights of the clerk and to the performance by him of his official duties, and to the reasonable exercise by the rest of the public of the same co-ordinate rights that the statute gives to them.

This case was decided by Division B.

Writ of Error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the Court.

*Maxwell & Reeves,* for Plaintiff in Error.

*E. D. Beggs* and *Blount & Blount,* for Defendant in Error.

TAYLOR, J. The plaintiffs in error filed their petition in the Circuit Court of Escambia county against the defendant in error, as clerk of the Circuit Court for said county, praying for mandamus to compel the said respondent as such clerk to permit the relators and their employes to the number of three to have access to the public records of his office and to make abstracts therefrom. Alternative writ was granted, which in substance alleged that the relators proposed to engage in making a complete abstract of all the records affecting titles to all the real estate in said county of Escambia for their own use as dealers in real estate and for use of such of the public as might apply to them for abstracts of title to any piece of real estate in said county, but that the respondent as such clerk refused to permit them and their employes to a reasonable number to have access to the public records in his office for such purpose except upon the payment by them to such clerk

of a large amount of money demanded by such clerk for such access thereto.

The respondent clerk demurred to the alternative writ upon the following grounds: 1. That relators have not shown any right to the relief prayed.

2. That relators have not shown any right to have access to the records mentioned in the petition and writ.

3. That relators have not shown any right to make abstracts of all the records, which, as they allege in the petition attached to the writ, they desire to abstract.

4. That relators have not shown that they have compensated or offered to compensate the respondent for the extra labor, expense and service to which he would necessarily be put by the abstracting of the records by relators, as desired by them.

This demurrer was sustained by the court, and final judgment entered dismissing the petition and writ at the cost of relators. To review this judgment the relators take writ of error here.

The errors assigned are that: 1. The court erred in sustaining the respondent's demurrer to the petition herein filed.

2. The court erred in dismissing the petition herein filed.

3. The court erred in denying the relators the relief prayed for.

4. The court erred in quashing the alternative writ of mandamus herein.

The sole question presented is whether a person or firm of persons with their assistants have the right in the Circuit Court Clerk's office during business hours to have access to the public records in the custody of such clerk for the purpose of taking abstracts and memoranda therefrom to be used in making a set of abstract books contain-

ing abstracts of the title to all the real estate in the county, such abstracts to be used by the persons making it in their own business as real estate dealers, and to be sold for a price to any person desiring an abstract of title to any piece of real estate in the county, and this without payment of any fees to such clerk, where the parties and their assistants do all the work of taking the abstracts and memoranda from such records without the assistance of the clerk or his deputies?

The authorities on the question are in great conflict, owing in some measure to the differences in the provisions of the statutes on the subject in the different States. Our statute, on the subject, after enumerating all of the different dockets and record books and files that the clerk is required to keep, and declaring him to be the recorder of all documents authorized or required by law to be recorded in his office, among these all title deeds, mortgages, judgments and other liens and instruments affecting the title to real estate, provides that: "Such records shall be always open to the public, under the supervision of the clerk, for the purpose of inspection thereof, and of making extracts therefrom; but the clerk shall not be required to perform any service in connection with such inspection or making of extracts without payment of the compensation fixed by law." This provision is re-iterated in both sections 1390 and 1391 of our Revised Statutes.

It will be observed that no limitation is prescribed by this statute as to the _extent_ or _duration_ of the right of access by the public to such records or to the making of extracts therefrom, but on the contrary its language is emphatic that "such records shall be _always_ open _to the public_," for the purpose of inspection and making extracts therefrom. Some of the cases relied upon by the respondent hold to the doctrine that no person has any such

right of inspection and extracting unless he is presently or prospectively interested in some particular title that he desires to investigate. Our statute imposes no such condition or limitation—but its language in the broadest terms declares that such records shall be *always open,* not to those members of the public only who may be presently or prospectively interested in some particular matter contained in such records, but *"to the public."* Besides this even were we to hold that the lounging loiterer on idle curiosity bent could with propriety be excluded from inspection of such records and from taking extracts therefrom, yet this should not warrant the exclusion of the person engaged in the lawful and highly useful enterprise of compiling an abbreviated abstract of the titles to all the different pieces of real estate in a county, aggregating therein in condensed and convenient form all the matter from all of such records that affects each individual parcel of such real estate. Such abstracts are great time and money savers to the public generally, and are at times quite remunerative to the compilers and owners thereof, and in the enterprise of compiling them the compilers become presently and prospectively materially *interested* in every particle of *information* disclosed by such records, whether they be presently or prospectively interested in the particular *properties* affected thereby or not.

It is contended again that the respondent clerk has the right to exclude the relators and their assistants from examination of the records and from making extracts therefrom unless such relators shall pay him a large amount as his fees and remuneration for such inspection and extracting. We think that the terms of our statute clearly forbids the assertion of any such claim or demand. The alternative writ of the relators alleges that the relators and their assistants have perfect knowledge of the loca-

tion in the respondent's office of all of the records sought
to be examined by them, and that they can and desire to
do all of the work of inspecting and abstracting such rec-
ords themselves without any assistance whatsoever from
the respondent clerk or his deputies; that they do not
need any such assistance from the respondent and do not
ask or desire it. Our statute already quoted in express
terms provides for just such a case when it says that "the
clerk shall not be required to perform any service in con-
nection with such inspection or making of extracts with-
out payment of the compensation fixed by law." This is
tantamount to saying that when he is *not* required to per-
form any service in connection with such inspection and
extracting then he is *not* entitled to any compensation;
and nowhere in our statutes is there any fee or compen-
sation fixed or prescribed for the clerk for the *bare super-
vision* in his office of parties who may go there themselves
to inspect and take extracts from the records without
calling upon him for any service or assistance in connec-
tion therewith, other than that bare general supervision,
observation or watchfulness on his part that it is his duty
at all times and under all circumstances to exercise in his
office to insure the safe keeping of such records. Such
constant superivsion, observation and watchfulness over
the records is one of the prime duties that he assumes
when he takes the office, and the law fixes no fee or com-
pensation therefor.

Our conclusion is that under the terms and provisions
of our statute the public generally, including any person
or firm who may be engaged in the enterprise of compiling
a complete set of abstract books of the titles to all the
real estate in a county, have the continuous right to all
reasonable hours and times by themselves or their agents
to inspect and make extracts from any and all of the pub-

lic records in the offices of Clerks of the Circuit Courts; and that where such inspection and extracting is done by the parties themselves or by their agents or assistants, without any service or assistance from the clerk or his deputies in connection therewith other than that general supervision and watchfulness as to what is going forward in his office that is necessary to the safe keeping of such records, then such clerk is not entitled to any fees or compensation. Boylan v. Warren, 39 Kan. 301, 18 Pac. Rep. 174; Bell v. Commonwealth Title Ins. and Trust Co., 189 U. S. 131, 23 Sup. Ct. Rep. 569; Silver. v. People, 45 Ill. 224; State v. Rachac, 37 Minn. 372. 35 N. W. Rep. 7: Lum v. McCarty, 39 N. J. L. 287; In re Chambers, 44 Fed. Rep. 786; Burton v. Tuile, 78 Mich. 363, 44 N. W. Rep. 282; People ex rel. Title Guarantee and Trust Co. v. Reilly, 38 Hun (N. Y.) 429; Hanson v. Eichstaedt, 69 Wis. 538, 35 N. W. Rep. 30; West Jersey Title & Guaranty Co. v. Barber, 49 N. J. Eq. 474, 24 Atl. 381. But while the public have this right it must at all times be exercised reasonably with a due regard to the rights and duties of the clerk and of other persons having similar rights, or as it was expressed in the case of People v. Richards, 99 N. Y. 620, 1 N. E. Rep. 258: "These records are, therefore, public records which every person has the right to inspect, examine and copy, at all reasonable times, in a proper way, and the register cannot deny access to his office or to the books for such purposes, to any person coming there at a proper time and in an orderly manner. But he must necessarily have control of his office and of the records, and must have some discretion to exercise as to the manner in which persons desiring to inspect, examine and copy the records may exercise their rights. He must transact the current business of the office and allow all persons reasonable fa-

State ex rel. Davis and Graham v. McMillan—Opinion of Court.

cilities to exercise their rights in his office.  He  cannot give the right to one person or one corporation to occupy his office to the exclusion of others, and each person must exercise his rights in the office consistently with the exercise of similar rights by others."  Or as it is expressed in Day v. Button, 96 Mich. 600, 56 N. W. Rep.  3:  "This right does not permit the register to be unduly annoyed by a large force, or by work at unseasonable hours, or by the monopoly of furniture, office room, or records to the exclusion of other persons, or interfere with his right to prescribe a reasonable use of the same.  It does, however, require that he recognize relator as one of the public, and accord to him reasonable privileges for the accomplishment of his purpose.  We do not feel called upon to specify the number of persons that respondent must accommodate, or to prescribe the rules which he may require relator to observe.  These should be made with reference to the circumstances, and with a view to the reasonable use by relator of books and office."

It follows from what has been said that the court below erred in sustaining the demurrer of the respondent to the alternative writ.  The judgment of the Circuit Court is, therefore, hereby reversed at the cost of defendant in error, with directions to overrule the respondent's demurrer to the alternative writ herein, and for such further proceedings as may be in accordance with law and not inconsistent with this opinion.

HOCKER, COCKRELL and SHACKLEFORD, JJ., and WHITFIELD, C. J., concur in the opinion.

CARTER, J., dissents.

CARTER, J., dissenting. From the allegations of
the alternative writ it appears that the defendant
in error does not deny the right of the relators
to inspect the records in his office, and to make
extracts therefrom for the purpose of making a complete
abstract of all the records affecting titles to all real es-
tate in the county of Escambia for their own use as deal-
ers in real estate and for the use of such of the public as
might apply to them for abstracts of title, but insists mere-
ly that he shall be compensated as clerk and custodian of
such records. The alternative writ alleges that the defen-
dant refused to permit relators and a reasonable number
of their employes to have access to such records   except
upon the payment of a large amount of money demanded
by him.   It also alleges that relators have perfect knowl-
edge of the location in defendant's office of all the records
sought to be examined; that they can and desire to do all
the work of inspecting and abstracting such records with-
out any assistance whatsoever from the defendant or his
deputies, and that they need no assistance from him and
do not ask or desire it.   In consequence of this special
knowledge they seek to escape the payment of any fee to
the clerk for his services in connection with the examina-
tion of the records.   If this position can be maintained,
and people who have no present pecuniary interest in the
records, may be permitted to take charge of the clerk's
records for the purpose of making memoranda from which
to compile information for sale to the public generally,
thus monopolizing for a time at least the attention of the
clerk in supervising such use of his records, or requiring
him to employ a deputy to do so, all without compensat-
ing the clerk, it is difficult to see why the latter may not
be required to permit any and all persons   who are not
familiar with the records, to handle them merely with a

view of becoming familiar with them in order that they may be enabled to search them for information to be sold to the public generally in the form of abstracts of the records. I do not think our statutes will bear any such construction, nor do I think they contemplate that the public have a right to make searches of the records against the clerk's consent and thereby deprive him of the search fees which are clearly and distinctly provided for by law. For years prior to the adoption of the Revised Statutes of 1892, clerks of the Superior and Circuit Courts in this State have been given by statute the right to charge search fees in connection with their custody of the records (Duval's Compilation, p. 211; Thompson's Digest, p. 431; McClellan's Digest, p. 180), and the Revised Statutes, section 1394 provide that "His compensation as clerk and recorder shall be entirely by fees, and shall be as follows." Then follows a schedule of fees among the items of which we find: "Searches of one year's standing or less, .10; of more than one year's standing .15." I take it there can be no doubt that prior to the adoption of the Revised Statutes, the relief here demanded could not have been obtained certainly not without paying the clerk's fees for searchers, as there was no provision authorizing individuals to make such searches and thereby deprive the clerk of the fees which the statute allowed to the custodian of the records. The Revised Statutes in my judgment do not change this rule. They provide that "Such records shall always be open to the public, under the supervision of the clerk, for the purpose of inspection thereof and of making extracts therefrom; but the clerk shall not be required to perform any service in connection with such inspection or making of extracts without payment of the compensation fixed by law." This is a new provision, not found in any

statute then in force, but it very carefully guards the rights of the clerk by omitting any requirement that the inspection shall be "free" or "without charge;" and by providing that the clerk shall not be *required to perform any service in connection with* such inspection or making of extracts without payment of the compensation fixed by law. Now the statute does not authorize any member of the public to dispense with any service which under the law the clerk is authorized to perform, nor does it grant the right to inspect the records "free" or "without charge," nor does it undertake to dispense with the payment of any fee which the clerk was authorized to charge under any statute then in force and continued in force by the Revision. The provision was evidently inserted for another purpose altogether. By the common law which was in force here when the Revision was adopted, the right of individuals or the public to inspect public records was a limited one, even in cases where the fees of the custodian were tendered. The public had no unlimited right of examination, with or without the payment of fees, and the provision in question was evidently inserted, not with a view of extinguishing the right of the clerk to charge fees, for its language shows the contrary, but to extend the right of examination so that the custodian could not refuse the right of inspection as he then by the common law had the right to do in certain cases. Before the Revision, individuals undoubtedly had the right to inspect certain public records, and this inspection was necessairly had under the supervision of the clerk, but I do not think the right to inspect was superior to the right of the clerk to charge his fees for searches. In other words the right to inspect was a right to do so upon paying the statutory fees, allowed the clerk, and I see nothing in the language of the Revision to change the rule. It expressly provides that the

clerk shall not be required to perform any service in connection with the inspection without payment of the "compensation" fixed by law, implying that some compensation is fixed for service rendered by the clerk in connection with such inspection. The statute expressly requires the clerk to supervise the inspection, which is certainly performing a service in connection with the inspecton. The section relating to fees says his "compensation" as clerk and recorder shall be "entirely by fees" and fixes the fees, including search fees, and no right is given to any person to deprive him of these fees by making searches themselves contrary to his wishes. The search fees are given the clerk as "compensation" for his services in keeping the records and supervising their inspection by others, and under the statute he can not be compelled to permit their inspection generally or for a particular purpose without payment of such fees.

If a statute authorizes an officer to perform a service and make a charge therefor, an individual can not, unless the statute authorizes it, perform such service, and thereby deprive the officer of his fee, particularly if the officer must necessarily perform some service in connection therewith as is the case here. State *ex rel.* Huebler v. Board of Police Commissioners, (Mo.) 82 S. W. Rep. 960; Hanrick v. Ake, 75 Texas 142, 12 S. W. Rep. 818; Morrison's Executor v. Rodes, 7 T. B. Monroe 20; 7 Cyc. note, p. 207. Suppose the party desired an extract or a copy made by him to be certified by the clerk, would the latter not have the right to charge precisely the same fee for certifying or signing and sealing a certificate already prepared as if he had written the entire document? The authorities above cited answer this question affirmatively. If that be true how can the officer be deprived of his fees for searches made by another, when he is required to super-

vise the making of such searches, and the statute expressly provides that he shall not be required to perform any service in connection with the inspection without payment of the compensation provided by law. I am not prepared to say that the right to inspect, include the right to search for the thing to be inspected, but if so the statute still requires the clerk to perform a service in connection with the search and authorizes him to demand compensation therefor.

The cases cited in the majority opinion from the Federal courts are based upon a statute requiring that the records "be open to the inspection of any person desiring to examine the same *without any fee or charge therefor.*" The court very properly held that search fees could not be charged under this statute. In re Chambers, 44 Fed. Rep. 786; Bell v. Commonwealth Title Insurance and Trust Company, 189, U. S. 131, 23 Sup. Ct. Rep. 569. The Wisconsin case cited, Hanson v. Eichstaedt, 69 Wis. 538, 35 N. W. Rep. 30, expressly held that the right of inspection is "subject to the payment of fees when allowed" under a statute much broader than ours. The decision does not intimate that the statute deprived the clerk of his search fees, or that parties could do so by making searches themselves. The Minnesota case, State v. Rachac, 37 Minn. 372, 35 N. W. Rep. 7, does not involve the question of fees, but simply the right of abstract men, having no personal interest, to inspect public records. The same is true of the Kansas case, Boylan v. Warren, 39 Kan. 301, 18 Pac. Rep. 174. The New York case, People v. Richards, 99 N. Y. 620, 1 N. E. Rep. 258, is based upon a statute which provides that the records shall "at all proper times be open for the inspection of any person paying the fees allowed by law." No question as to fees was involved in that case, nor does the court intimate an opinion that

the custodian can be compelled to permit inspection without the payment of search fees or other compensation. The only question there considered was whether the custodian could be compelled by mandamus to furnish greater facilities and privileges in the office, than relator was then receiving and the court held that he could not. In People v. Reilly, 38 Hun 429, two statutes were invoked. One made it the duty of the register to permit all persons to have *free* access to the books, records and indices of the office, *for search* at all reasonable times during the day time, and to exhibit the same to persons wishing to make searches. The other authorized the relator (a corporation) to make and cause to be made and to purchase and pay for all such searches, abstracts, indices, maps and copies of records as the trustees of the corporation might deem necessary. There can be no doubt that these statutes deprived the register of the right to charge search or other fees in connection with the inspection of the records, but we have no such provisions for free access, or giving the right to individuals to make searches, hence the decision there made has no application to this case. In Silver v. People *ex rel.* Whitmore, 45 Ill. 224, the legislature had authorized the Supervisors of Grundy county, which was formerly a part of LaSalle county, to provide suitable books and to cause to be transcribed therein such portions of the records of LaSalle county as related to lands embraced within the limits of the new county and to employ a suitable person to transcribe such records. The board of supervisors through its committee appointed the relator for that purpose. The recorder of LaSalle county refused relator access to his office and records, claiming the exclusive right to make copies of the records. The court held that the legislature had power to enact the law in question, and that it gave relator free access to the

recorder's office for the purpose of transcribing the records for a public purpose. In Lum v. McCarty, 39 N. J. L. 287, the New Jersey Court of Errors and Appeals held that under legislation somewhat similar to ours, the clerk could not demand a search fee for searches made by others; that the fee prescribed applied only to searches made by the clerk, and that the public had the right of free access and free search. overruling a previous decision of the Supreme Court, Fleming v. Clerk of County of Hudson, 30 N. J. L. 280, which held the contrary. In West Jersey Title & Guaranty Co. v. Barber, 49 N. J. Eq. 474, 24 Atl. Rep. 381, the Vice Chancellor followed Lum v. McCarty, but upon appeal this decision was reversed by the Court of Errors and Appeals, 53 N. J. Eq. 158. The latter court held that the clerk could not be deprived of his right to search fees by the public indiscriminately, but only by persons having a personal interest, or representing persons who did in particular titles or particular property, and that the case of Lum v. McCarty is not authority for the contention that any one may occupy the offices of the county clerk for the purpose of making an abstract of the records in order to set up a rival business, and that "the case of Lum v. McCarty carries the right of the public to its extreme limit." See, also, Fidelity Trust Company v. Clerk of the Supreme Court, 65 N. J. L. 495, 47 Atl. Rep. 451, where the Supreme Court refused to extend the doctrine of Lum v. McCarty to certain indices to records, prepared at public expense, in the custody of the keeper of the records. In Burton v. Tuile, 78 Mich. 363, 44 N. W. Rep. 282, the court held that the custodian had no right to demand any fee or compensation for the privilege of access to the records, or for any examination thereof not made by himself or his clerks or deputies, and that

17 S C

he had no exclusive right to search the records against any other citizen, citing Lum v. McCarty and the Kansas, Minnesota and Wisconsin cases, and People v. Richards, 99 N. Y. 620, 1 N. E. Rep. 258, none of which as I have shown involve the question of search fees except Lum v. McCarty. This decision is followed in Day v. Button, 96 Mich. 600, 56 N. W. Rep. 3. In State *ex rel.* Clark v. Long, 37 West Va. 266, 16 S. E. Rep. 578, the court held that search fees could not be charged under a statute making records open to the inspection of any person, unless the search was actually made by the clerk, but in Payne v. Staunton, 46 S. E. Rep. 927, the same court held that the right extended only to those having an interest in the record or paper of which inspection is sought, and the inspection must be for a legitimate purpose.

On the other hand the better reasoned cases hold that under statutes similar to ours, it is a perversion of their meaning to hold that a party may without the payment of search or inspection fees, search and make extracts from the records, and compel the custodian to supervise such inspection and examination, where the purpose is to make an abstract of all the records of the county for speculative purposes. Buck v. Collins, 51 Ga. 391; Land Title Warranty & Safe Deposit Co. v. Tanner, 99 Ga. 470, 27 S. E. Rep. 727; Belt v. Prince George's County Abstract Co. 73 Md. 289, 20 Atl. Rep. 982. The New Jersey and West Virginia rule is practically the same as I have shown. See, also, Fleming v. Clark of Hudson County, 30 N. J. L. 280, which though partially overruled in the State where rendered, in my opinion correctly construes statutes relating to the right of the clerk to charge search fees in connection with statutes giving the public a right to inspect public records, where the statutes do not in terms provide that the right of inspection shall be free or without charge, or

specifically authorize the public to make searches. I am, therefore, of opinion that the judgment of the Circuit Court refusing the writ of mandamus should be affirmed.