DIRECT-MAIL SERVICE, INC. *vs.* REGISTRAR OF MOTOR VEHICLES & another.

Suffolk. November 6, 1936. — January 4, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Registry of Motor Vehicles. Public Record.*

The records kept by the registrar of motor vehicles of automobile registrations and licenses are public records; and under G. L. (Ter. Ed.) c. 66, § 10; c. 90, § 30, permission to inspect and copy such records, under reasonable regulations, should not have been refused to a person because he desired to copy all the records in order to carry on the business of selling for profit the information contained in them.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on January 23, 1936.

The writ was ordered to issue by *Pierce*, J. The respondents alleged exceptions.

*R. Clapp*, Assistant Attorney General, for the respondents.

*Herbert Parker*, (*J. Goldberg* with him,) for the petitioner.

QUA, J. After a hearing upon the pleadings and the auditor's report, the single justice has ordered that a writ

of mandamus issue commanding the registrar of motor vehicles to permit the petitioner during reasonable business hours to examine and to make copies or transcripts "of all certificates and licenses of motor vehicles" issued by the registrar, and commanding the commissioner of public works to refrain from instructing the registrar to refuse to permit the petitioner to make such examination and such copies or transcripts. The respondents except to the refusal of the single justice to grant certain requests for rulings and to the ruling involved in the making of the order. The question presented is whether upon the facts found by the auditor the petitioner has a right both to examine and to copy, not certain specified portions, but all of the records of certificates of registration and licenses preserved in the registrar's office.

Material findings of the auditor are these: The petitioner is engaged in the business of furnishing to its customers information in regard to registrations issued by the registrar. It cannot carry on this business and will suffer substantial damage unless it can examine and procure copies of the records. Up to the date of the hearing in March, 1936, between six hundred thousand and seven hundred thousand registrations had been recorded in at least sixty bound volumes which the registrar as a general rule permits the public to inspect. Each volume contains ten thousand registrations. Several copies of the same matter are also preserved in other forms to which the public is not allowed access. Additional copies could be multigraphed at the same time, if necessary. The demands of the public to examine the records are not sufficient to create confusion or to prevent any person at any time from securing information with reasonable promptness. Early in December, 1935, the petitioner sent one or two girls in its employ to the public room at the registry with typewriters and paper. They began copying the bound volumes, receiving one volume at a time from the clerk in charge. The copying continued until some time in January when the respondent commissioner instructed the chief clerk that no one would be permitted to copy the entire record, in con-

sequence of which the girls withdrew. The respondents refuse to permit the petitioner to make or cause to be made copies or transcripts of all or substantially all of the records. No confusion or substantial inconvenience to other members of the public or disruption of the orderly conduct of public business or interference with the work of the office resulted from the petitioner's work of copying while it continued, and "no such results should have been reasonably anticipated from a continuance thereof in the same manner." The action of the respondent commissioner "was not due to any confusion or inconvenience experienced or apprehended in the administration of the registrar's office," but was due to the fact that the commissioner had awarded an "official" contract to print the list of registrations to a competitor of the petitioner and to the commissioner's desire to conform to an assurance given to this competitor that the list would not be "released" to any other concern. See *Direct-Mail Service, Inc.* v. *Commissioner of Public Works,* 295 Mass. 9.

G. L. (Ter. Ed.) c. 90, §§ 2 and 9, provide for the registration of motor vehicles as a condition precedent to the right to operate them upon the public ways, and § 30 of the same chapter provides that the records of the registrar "shall be open to the inspection of any person during reasonable business hours." See also G. L. (Ter. Ed.) c. 66, § 10. The very object of requiring registration of automobiles is to make readily available to the public at all times accurate information as to their ownership and as to the persons responsible for their operation. *Koley* v. *Williams,* 265 Mass. 601, 603. *Nash* v. *Lang,* 268 Mass. 407, 409. There can be no doubt, therefore, that the registrar's records are fully impressed with the character of public records, and that the public generally has with respect to them all the privileges of examination and use which that status affords. G. L. (Ter. Ed.) c. 66, § 10.

The respondents contend, however, that the statutory right to "inspect" the records is limited by implication to examination as to particular persons or particular auto-

mobiles for the protection of some particular right or interest and that it does not extend so far as to permit persons or corporations having no immediate interest in any particular entries to copy all the records in the registration office in order to carry on the business of selling for profit the information contained in them. We cannot accept this contention. Whatever may have been the common law in the absence of statute, we are unable to discover anything in the nature or purpose of the statute specially applicable to these records quoted above or in G. L. (Ter. Ed.) c. 66, § 10, applicable to public records generally, which justifies us in qualifying the broad and plain language of the Legislature by importing into it conditions and limitations which are not expressed and which are not necessary in order to give effect to its main purpose. Both statutes give the right of inspection to "any person." Neither statute limits the extent of the inspection or in any manner suggests that it must be sought for one purpose rather than for another. It is common knowledge that much use is made of public records for reasons having nothing to do with any present problem of the person examining them. Lists of conveyances, attachments, bankruptcies, building permits and other matters having their sources in the public records are regularly published in commercial journals which are sold to business men and to the public generally. Such use of the material contained in records often enhances their value to the community. We cannot believe that the Legislature intended to give to the custodian of a public record power to inquire of applicants for inspection as to the use which they intend to make of the information to be obtained or the motives which prompted them in seeking it. See *Shea* v. *Parker*, 234 Mass. 592. Nor do we see how the right to inspect records can be confined to certain selected entries or where the line can be drawn short of allowing inspection in proper time and manner of all the records, if inspection of · all is desired. The right to inspect commonly carries with it the right to make copies without which the right to inspect would be practically valueless. *Varney* v. *Baker*, 194 Mass. 239, 241–242. *Powelson* v.

*Tennessee Eastern Electric Co.* 220 Mass. 380. *Shea* v. *Parker*, 234 Mass. 592. *People* v. *Cornell*, 47 Barb. S. C. 329. *Clay* v. *Ballard*, 87 Va. 787. We see no reason why the right to make copies is not coextensive with the right to inspect. We believe that in general the public interest will be best served by the largest freedom in the use for lawful purposes of public records kept at the public expense. We conclude, therefore, that the rulings and order of the single justice were right.

The question here discussed has been the subject of much conflict in the judicial decisions of various jurisdictions. The trend of authority, however, especially among the more recent cases, seems in accord with the views here expressed. *People* v. *Richards*, 99 N. Y. 620. *People* v. *Cornell*, 47 Barb. S. C. 329. *People* v. *Reilly*, 38 Hun, 429, 431. *Day* v. *Button*, 96 Mich. 600. *State* v. *Rachac*, 37 Minn. 372. *Chicago Title & Trust Co.* v. *Danforth*, 236 Ill. 554. *Shelby County* v. *Memphis Abstract Co.* 140 Tenn. 74. *Atlanta Title & Trust Co.* v. *Tidwell*, 173 Ga. 499. *State* v. *McMillan*, 49 Fla. 243. *Rock County* v. *Weirick*, 143 Wis. 500. *In re McLean*, 2 Flip. 512. Compare, however, *Cormack* v. *Wolcott*, 37 Kans. 391; *Newton* v. *Fisher*, 98 N. C. 20; *Randolph* v. *State*, 82 Ala. 527. And see *Bell* v. *Commonwealth Title Ins. & Trust Co.* 189 U. S. 131.

In order to avoid any misapprehension, perhaps we ought to add that the right of an applicant to copy a great mass of records may be circumscribed by physical limitations which are unavoidable if the right itself is to be preserved both for the applicant and for others. No one person can take possession of the registry or monopolize the record books so as to interfere unduly with the work of the office or with the exercise of equal rights by others, and the applicant must submit to such reasonable supervision on the part of the custodian as will guard the safety of the records and secure equal opportunity for all. The ambitious character of the petitioner's project in this instance might induce some speculation as to whether questions of this kind would arise. But the findings of the auditor are adequate to show that it is possible to carry into execution

the writ which has been ordered without encountering these difficulties. The petitioner was stopped for an altogether different reason.

*Exceptions overruled.*