THOMAS F. HURLEY *vs.* BOARD OF PUBLIC WELFARE OF LYNN.

Essex. October 9, 1941. — November 24, 1941.

Present: FIELD, C.J., QUA, COX, & RONAN, JJ.

*Public Record. Public Welfare. Municipal Corporations*, Public records, Public welfare. *Mandamus. Lynn.*

Under G. L. (Ter. Ed.) c. 4, § 7; c. 117, § 32; Spec. St. 1917, c. 340, § 49, records of the board of public welfare of Lynn of persons supported and relieved, of travellers and vagrants lodged at the city's expense and of the amounts paid for such support and relief, are public records.

Upon exceptions to an order directing the issuance of a writ of mandamus enforcing a right that was the petitioner's when the order was made,

this court modified the order to bring it within certain limitations established by legislation enacted while the case was pending before it.

PETITION, filed in the Supreme Judicial Court for the county of Essex on June 7, 1934, and afterwards amended, for a writ of mandamus.

The case was heard by *Donahue*, J., who on February 18, 1941, ordered issuance of a writ of mandamus "directing the respondents to permit the petitioner at reasonable times and under their supervision to inspect and examine the records kept by the respondents of persons fully supported, persons relieved and partially supported, travellers and vagrants lodged at the expense of the city, and of the amount paid for such support and relief, and to furnish the petitioner with copies of such records on payment of a reasonable fee."

The respondents alleged exceptions.

*P. F. Shanahan*, City Solicitor, for the respondents, submitted a brief.

*R. T. Parke*, for the petitioner.

QUA, J.   The single justice ordered that a writ of mandamus issue directing the respondents to permit the petitioner, a resident and taxpayer of Lynn, to examine the records kept by the respondents of persons supported and relieved and of travellers and vagrants lodged at the expense of the city and of the amount paid for such support and relief and to furnish the petitioner with copies of such records on payment of a reasonable fee.   The respondents except to the refusal of the single justice to grant requests for rulings, most of which present in various forms the question whether these records are public records to which the petitioner has a right of access.

It is provided by G. L. (Ter. Ed.) c. 66, § 10, that "Every person having custody of any public records shall, at reasonable times, permit them to be inspected and examined by any person, under his supervision, and shall furnish copies thereof on payment of a reasonable fee."   By G. L. (Ter. Ed.) c. 4, § 7, the words "Public records" as used in the statutes, "unless a contrary intention clearly appears," are

defined as including "any written or printed book or paper, any map or plan of the commonwealth, or of any county, city or town which is the property thereof, and in or on which any entry has been made or is required to be made by law . . . ." It cannot be doubted that the records kept by the respondents are the "property" of the city. The board of public welfare, formerly called "board of overseers of the poor," is listed by the charter of Lynn, Spec. St. 1917, c. 340, § 20, among the "administrative officers" whom it is the duty of the city to provide and maintain. See also G. L. (Ter. Ed.) c. 117, §§ 1, 2. The entries in these records are "required to be made by law." It is provided by G. L. (Ter. Ed.) c. 117, § 32, that "Boards of public welfare shall keep full and accurate records, in a form prescribed by the department of public welfare, of persons fully supported, persons relieved and partially supported, and travelers and vagrants lodged at the expense of their towns [includes cities, G. L. (Ter. Ed.) c. 4, § 7, Thirty-fourth], and of the amount paid for such support and relief." In addition to this the charter of Lynn (Spec. St. 1917, c. 340, § 49) provides that "All administrative boards and officers shall keep a record of their official transactions, which shall be open to public inspection." It follows from these statutes that (with exceptions due to recent statutory changes hereinafter mentioned) the records kept by the respondents and described in the order of the single justice are public records. The petitioner has a right to inspect and examine them at reasonable times and to secure copies of them. This right he may enforce by mandamus. *Direct-Mail Service, Inc.* v. *Registrar of Motor Vehicles*, 296 Mass. 353. As to these records no "contrary intention clearly appears."

The records here involved are readily distinguishable from the engineer's notes referred to in *Allen* v. *Kidd*, 197 Mass. 256, 258, 259, the returns (not required to be filed) of pawnbrokers to licensing boards held not public records in *Round* v. *Police Commissioner of Boston*, 197 Mass. 218, and the accident reports to the Industrial Accident Board to which a special status was ascribed in *Gerry* v. *Worcester Consoli-*

*dated Street Railway*, 248 Mass. 559, 566–568. For a general discussion of what is admissible in evidence as a public record, see *Commonwealth* v. *Slavski*, 245 Mass. 405, 415–417.

In view of what has just been said upon the crucial question, the requests not directly dealing with that question were immaterial and were properly refused. There was no error.

Since the order of the single justice was entered St. 1941, c. 630,[1] has been enacted, among other things limiting to "public officials of the commonwealth" the right to inspect the records of city and town welfare departments relative to old age assistance and aid to dependent children, and forbidding any board to permit the publication of the names of recipients of aid to the blind furnished to it under any provision of law or to make use of such names for purposes not directly connected with the administration of aid to the blind. This statute does not apply to records of the support or relief of poor and indigent persons in general. Such records remain public records to which the petitioner has a right of access. In compliance with the new act the scope of the writ to be issued must be so narrowed as to exclude from its operation the records and lists of names to which the act refers.

The exceptions are overruled, but a statement is to be inserted in the writ that nothing contained therein shall be construed to require the respondents to permit the petitioner to inspect or examine or to furnish the petitioner with copies of records relative to old age assistance or aid to dependent children or relative to the names of recipients of aid to the blind furnished to the respondents under any provision of law.

*So ordered.*

---

[1] The Governor on August 21, 1941, approved St. 1941, c. 630, and under "The Referendum II. Emergency Measures" of art. 48 of the Amendments to the Constitution declared it an emergency law to take effect forthwith. It adds a new section, 17A, to G. L. c. 66; a new section, 26A, to G. L. c. 69; a new section, 4A, to G. L. c. 121; and a new section, 43, to G. L. c. 271. — REPORTER.