AARON HOBART, JUNIOR, & another *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION & others.

Suffolk.    December 2, 1940. — April 2, 1942.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Commissioner of Corporations and Taxation. Mandamus. Public Record. Municipal Corporations,* Public records. *Assessors of Taxes.*

Municipal assessors of taxes are not subordinates of the commissioner of corporations and taxation in the sense that they are members of his department, nor are they agents of the commissioner; they are public officers selected by their municipalities.

"Opinions," given by the commissioner of corporations and taxation under G. L. (Ter. Ed.) c. 58, § 1, as amended, to assessors and col-

lectors of taxes "upon any question arising under any statute relating to the assessment and collection of taxes," are not directions to them but only advice on questions as to which the responsibility of decision rests with them.

Mandamus does not lie directing the commissioner of corporations and taxation, in giving "his opinion" to assessors and collectors of taxes under § 1 of G. L. (Ter. Ed.) c. 58, as amended, "upon any question arising under any statute relating to the assessment and collection of taxes," to refrain from advising in a particular manner even if the opinion given by him is erroneous as a matter of law.

Records respecting abatements, which G. L. (Ter. Ed.) c. 59, § 60, as appearing in St. 1941, c. 209, requires shall be kept by assessors of taxes, are, subject to the limitations there defined, public records under c. 4, § 7, Twenty-sixth, and, so limited, are open to inspection as provided in c. 66, § 10.

By reason of St. 1941, c. 209, substituting a new § 60 in G. L. (Ter. Ed.) c. 59, and enacted after a report to this court of a statement of agreed facts upon which petitioners were entitled as a matter of law under the former § 60 to a writ of mandamus permitting examination of all public records respecting abatements, this court directed that a writ issue directing the assessors to permit the petitioners to examine such records subject to the limitations specified in the new § 60.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on May 4, 1940, for a writ of mandamus.

Hearings were by *Donahue*, J.

*W. A. Neal*, for the petitioners.

*E. O. Proctor*, Assistant Attorney General, for the commissioner of corporations and taxation.

*J. D. Smith*, City Solicitor, for the respondent assessors of Quincy, submitted a brief.

FIELD, C.J. This is a petition for mandamus brought in this court by citizens of the city of Quincy against the assessors of said city and particularly the assessor who is clerk of the board of assessors, and against the commissioner of corporations and taxation. The petitioners allege that they have requested the respondent assessors to allow the petitioners to examine at reasonable times the "abatement record books and the records of the votes, orders and proceedings of the board of assessors" in their possession, and that such assessors have refused to allow such examination. It is alleged that the assessors so refused by reason of the "directions, commands and instructions" of the respondent commissioner. The petition alleges a similar request of the

respondent assessor who is clerk of the board of assessors and refusal by him. The petition also alleges that the respondent commissioner advised the respondent assessors by letter that "under no circumstances should the abatement record book showing the applications for abatement, the record of action by the board of assessors, or any other papers or records employed by the assessors in reaching a conclusion in respect to abatement applications, be made public by permitting persons to look at lists, papers, or records relating to abatements. Neither should the names of applicants for abatements be published, nor any information relating thereto be furnished to a city or town government because of any vote, order or otherwise," and that the petitioners have requested the respondent commissioner to rescind such advice, but that he has refused to do so.

The petitioners pray for a writ of mandamus directed to the respondent assessors requiring them to permit the petitioners to examine at reasonable times the records referred to, for a like writ directed to the respondent assessor who is clerk of the board, and also for a writ of mandamus directed to the respondent commissioner requiring him to cease and refrain from instructing the other respondents not to permit examination of such records. No question has been raised that there is any improper joinder of parties respondent.

The respondent commissioner demurred to the petition, assigning as a reason that "Under G. L. c. 58, § 1, the commissioner is required to 'give his opinion to assessors and collectors upon any question arising under any statute relating to the assessment and collection of taxes'; that it appears from the allegations of the petition that the commissioner's letter of April 2, 1940, was in the nature of an opinion to the assessors of Quincy 'relating to the assessment and collection of taxes'; that even if said opinion is erroneous in law, the respondent cannot be ordered by a writ of mandamus to desist from the performance of his statutory duty." A statement of agreed facts signed by the other respondents and the petitioners was filed in the case.

A single justice of this court sustained the demurrer of the respondent commissioner, reported such action to this court, and also reported to this court the case against the other respondents, without decision, upon the pleadings and the statement of agreed facts.

1. The demurrer of the commissioner was sustained rightly.

The respondent assessors are not subordinates of the respondent commissioner in the sense that they are members, either as subordinate officers or employees, of the department of corporations and taxation, which is under the supervision and control of the commissioner. Art. 66 of the Amendments to the Constitution of the Commonwealth. G. L. (Ter. Ed.) c. 14. The assessors are not his agents. They are public officers selected by the municipalities of the Commonwealth charged by statute with the performance of certain specified duties, and are not State officers in the ordinary sense of the term. G. L. (Ter. Ed.) c. 59. See *Walker* v. *Cook*, 129 Mass. 577, 578; *Cox* v. *Segee*, 206 Mass. 380, 382; *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 47; *Opinion of the Justices*, 167 Mass. 599, 600. However, in G. L. (Ter. Ed.) c. 58, there are several sections (§§ 1–8, as amended) under the subheading "Supervision of Local Taxation" by which certain duties with respect to local taxation are imposed upon the commissioner. But in the performance of their statutory duties the assessors act under the direction of the commissioner only so far as the power of direction is conferred upon him by statute. Several sections of G. L. (Ter. Ed.) c. 58, amended in some particulars, require the commissioner to furnish information to the assessors. §§ 1, 2, 3. Section 3, as amended, provides that the commissioner shall furnish information "relating to the assessment, valuation and ownership of property taxable in their town" and shall give them "any further instruction and supervision as to their duties needed to secure uniform assessment and just taxation" and to equalize the valuation of property for the purpose of taxation. Section 4 provides that in certain cases the commissioner shall "direct" the assessors to

adopt certain methods of keeping their records and to make use of certain information, and § 5 provides that the commissioner shall give "instructions" for preparing notice and bringing in lists, and "prescribe forms therefor." Section 1, however, provides that the commissioner "may visit any town, inspect the work of its assessors and give them such information and require of them such action as will tend to produce uniformity throughout the commonwealth in valuation and assessments," and provides further that he "shall prepare and issue printed instructions to assessors as a guide to them in carrying out said purpose," and "may furnish to local assessors blank forms for use in valuing such property," and that he "shall give his opinion to assessors and collectors upon any question arising under any statute relating to the assessment and collection of taxes, and may obtain the opinion of the attorney general upon such question."

The matter with respect to which the respondent commissioner, according to the allegations of the petition, advised the respondent assessors by letter, does not fall within any of the provisions above set forth authorizing the commissioner to require or direct action by the assessors, or even to instruct or supervise with respect to such action. At most, the duty of the commissioner with respect to matters referred to in this letter was to "give his opinion" to assessors "upon any question arising under any statute relating to the assessment and collection of taxes." § 1. We assume in favor of the petitioners, without deciding, that the advice given by the commissioner to the assessors by letter was given in pursuance of his duty to "give his opinion." In any event the advice so given cannot be regarded as in the nature of a direction to the assessors or anything more than an expression of his opinion upon a matter with respect to which the responsibility for action was on the assessors.

Whether or not there is a statutory duty upon the commissioner enforceable by mandamus, as a ministerial duty, to "give his opinion" to the assessors, mandamus will not lie to compel him to advise the assessors by such an opinion

in a particular manner. The obvious purpose of the statute is that the assessors shall have the benefit of the judgment of the commissioner based upon his learning and experience for their guidance in acting upon their own responsibility. But such an opinion of the commissioner, in a matter such as that here involved, in which he has no power of direction, is advice and not an order. Nor is it an adjudication. It is an exercise by the commissioner of his discretion and judgment, even though it involves a question of law and is erroneous as matter of law. And mandamus does not lie to control the exercise of discretion and judgment by a public officer (*Burke* v. *Metropolitan District Commission,* 262 Mass. 70, 74–75), though, if an act performed by an administrative officer in the exercise of discretion and judgment is illegal and consequently beyond the scope of such officer's discretion and judgment, mandamus, in a proper case, will lie to set aside such illegal act and to command such officer to perform his duty in accordance with law. *Attorney General* v. *Suffolk County Apportionment Commissioners,* 224 Mass. 598, 609. But the act that the petitioners as matter of substance seek to have set aside and the duty that they seek to have performed are the act and the duty of the assessors, with respect to which the assessors are entitled, at most, merely to the advice of the commissioner but with respect to which they are not subject to his direction. The position of the commissioner in performing his duty of giving such advice is analogous, though somewhat remotely, to the position of a court that, although, in a proper case, subject to being directed by mandamus to exercise its jurisdiction, cannot be directed as to the decision to be made. See *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 164–165. To extend the scope of mandamus to review of the advice of the commissioner to assessors in such a case with respect to its correctness as matter of law would extend the scope of the statutory provision that the commissioner "shall give his opinion" to assessors in certain cases to a provision that the court shall give its opinion to assessors in such cases. No such extension of the scope of the statutory provision is warranted.

Other possible objections to the maintenance of a petition for mandamus against the commissioner for this purpose need not be considered. In the case of *Direct-Mail Service, Inc.* v. *Registrar of Motor Vehicles*, 296 Mass. 353, 354–355, cited by the petitioners, where a writ was issued against the commissioner of public works, though the distinction between advice and acts was not discussed, the conduct of the commissioner of public works involved apparently went beyond a mere expression of opinion to independent public officers such as is here involved. G. L. (Ter. Ed.) c. 16. *Direct-Mail Service, Inc.* v. *Commissioner of Public Works*, 295 Mass. 9.

2. The case against the respondent assessors comes before us on a statement of agreed facts without decision by the single justice. The statement of agreed facts sets forth in greater detail and with some differences in form of statement the facts alleged in the petition. This statement of agreed facts describes the records that the petitioners requested the assessors to permit the petitioners to examine — a request that was refused — as "the records which it is provided by General Laws, Chapter 59, Section 60 shall be kept by them and also the records, in so far as they relate to action taken upon applications for abatement, which it is provided by General Laws, Chapter 66, Section 6 shall be kept by the Clerk of the Board of Assessors," and the records that the petitioners requested the clerk to permit them to examine — a request that was refused — as the records referred to as required to be kept by the clerk. Further statement of facts is not required.

There is no contention by the respondent assessors that the petitioners are not entitled to a writ of mandamus against the assessors, as prayed for, if the records described in the statement of agreed facts are "public records" within the meaning of G. L. (Ter. Ed.) c. 66, § 10, providing, so far as here material, that "Every person having custody of any public records shall, at reasonable times, permit them to be inspected and examined by any person, under his supervision." See *Hurley* v. *Board of Public Welfare of Lynn*, 310 Mass. 285. General Laws (Ter. Ed.) c. 4, § 7,

provides that in construing statutes, "unless a contrary intention clearly appears: . . . Twenty-sixth, 'Public records' shall mean any written or printed book or paper, any map or plan of the commonwealth, or of any county, city or town which is the property thereof, and in or on which any entry has been made or is required to be made by law, or which any officer or employee of the commonwealth or of a county, city or town has received or is required to receive for filing, and any book, paper, record or copy mentioned in sections five to eight, inclusive, and sixteen of chapter sixty-six, including public records made by photographic process as provided in section three of said chapter."

General Laws (Ter. Ed.) c. 59, § 60, referred to by the petitioners in their request of the assessors as describing the records that they sought permission to examine, in force at the time the request was made and at the time the petition was brought, provided: "Every board of assessors shall keep a record of all abatements of taxes. The record of abatement of the whole or any part of any tax shall show plainly the following details, viz.: . . . [nine separate items are there described, but no specific reference is made to the application for abatement]. If the record of an abatement is made as a part of the record of a meeting of the board of assessors it shall be signed by the clerk or secretary of the board for that meeting; otherwise by a majority of the board." General Laws (Ter. Ed.) c. 66, § 6, also referred to in the request by the petitioners of the assessors, and referred to in the request by the petitioners of the clerk of the board of assessors, provides, in part: "Every department, board, commission or office of the commonwealth or of a county, city or town, for which no clerk is otherwise provided by law, shall designate some person as clerk, who shall enter all its votes, orders and proceedings in books and shall have the custody of such books, and the department, board, commission or office shall designate an employee or employees to have the custody of its other public records."

Clearly the "record of all abatements of taxes" that by

the terms of G. L. (Ter. Ed.) c. 59, § 60, a "board of assessors shall keep" was a "written or printed book or paper . . . in or on which any entry has been made or is required to be made by law" within the meaning of G. L. (Ter. Ed.) c. 4, § 7, Twenty-sixth, "according to the common and approved usage of the language," and the words in this statute were not "technical" and had acquired no "peculiar" meaning. G. L. (Ter. Ed.) c. 4, § 6, Third. It is immaterial for the purposes of the present case whether the records were "the property" of the city or of the Commonwealth (compare G. L. [Ter. Ed.] c. 60, § 8; *Hurley* v. *Board of Public Welfare of Lynn*, 310 Mass. 285, 287,) since they were "the property" of one or the other within the meaning of G. L. (Ter. Ed.) c. 4, § 7, Twenty-sixth, and not "the property" of the assessors as individuals, who at most had only custody thereof through the clerk or an employee of the board of assessors. See G. L. (Ter. Ed.) c. 66, § 6. It follows, therefore, that the records of the assessors in question were "public records" as defined by G. L. (Ter. Ed.) c. 4, § 7, Twenty-sixth, subject to the provisions of G. L. (Ter. Ed.) c. 66, § 10, "unless a contrary intention clearly appears."

But no such contrary intention clearly appears. There is nothing in the general nature of the records that would take them out of the application of G. L. (Ter. Ed.) c. 66, § 10, as in the case of accident reports to the Industrial Accident Board. See *Gerry* v. *Worcester Consolidated Street Railway*, 248 Mass. 559, 566–568. And see *Round* v. *Police Commissioner of Boston*, 197 Mass. 218. On the contrary, the matter of the extent to which abatements of local taxes are granted is one in which the public has an interest, as it has in the valuation and assessment for local taxation, with respect to which the statute provides expressly for "public inspection" of valuation and assessment books or copies thereof. G. L. (Ter. Ed.) c. 59, § 43. *Cox* v. *Segee*, 206 Mass. 380, 382–383. It is argued, in substance, that this express provision for "public inspection" imports that without such an express provision these books would not have been "public records" subject to inspection under the

general provision for inspection of "public records" contained in G. L. (Ter. Ed.) c. 66, § 10, and that by implication other records relating to taxation, particularly those relating to abatement, were not so subject without express provision therefor. A similar argument is based upon other express statutory provisions for inspection of records relating to taxation. See G. L. (Ter. Ed.) c. 59, § 32; c. 58A, § 13, as amended; c. 62, § 32; c. 63, § 71A, as finally amended by St. 1939, c. 451, § 30. None of these statutes shows by implication any clear intention that, apart from express provision to the contrary, records relating to taxation generally, and particularly those relating to abatement of taxes, shall not be regarded as "public records" as defined in G. L. (Ter. Ed.) c. 4, § 7, Twenty-sixth, and as such be subject to inspection under the provisions of G. L. (Ter. Ed.) c. 66, § 10. The valuation and assessment books referred to in what is now G. L. (Ter. Ed.) c. 59, § 43, were held in *Commonwealth* v. *Segee*, 218 Mass. 501, 503, to be "public records" within what is now G. L. (Ter. Ed.) c. 4, § 7, Twenty-sixth, though no question of inspection was involved. Said § 43 prescribes conditions of "public inspection" and does not fairly import that, apart from this section, there would be no right of "public inspection" of valuation and assessment books. General Laws (Ter. Ed.) c. 58A, § 13, as amended, makes clear that certain papers "shall be open to the inspection of the public" that with some reason might be thought to fall outside the definition of "public records" in G. L. (Ter. Ed.) c. 4, § 7, Twenty-sixth. The other statutes relied upon, though containing express affirmative provisions for limited inspection, are fairly to be interpreted as limitations upon the general right of inspection of "public records" under G. L. (Ter. Ed.) c. 66, § 10. See particularly G. L. (Ter. Ed.) c. 59, § 32. And see *Brackett* v. *Commonwealth*, 223 Mass. 119, 126; *James Millar Co.* v. *Commonwealth*, 251 Mass. 457, 464. But such a limitation is not to be implied with respect to records not within the scope of these statutes respectively. We conclude, therefore, that at the time the petitioners made their request to be allowed to examine the

records described in G. L. (Ter. Ed.) c. 59, § 60, they were entitled to examine them, subject to the limitations prescribed by G. L. (Ter. Ed.) c. 66, § 10.

When this case was presented to this court, it was stated in the brief for the respondent assessors that a petition for legislation relating to the subject of public examination of records of abatements had been presented to the General Court. Since that time such legislation has been passed and has taken effect in the form of a substitution by St. 1941, c. 209, of a new § 60 in c. 59 of the General Laws. This new statute makes various changes in the language of the section, but makes no change in the details of the record except to omit a requirement, in certain cases, of "the cause or reason for the abatement." There are, however, other changes. By the new section the "record of abatement" is to be "signed by a majority of the board," the records are required to be "kept . . . in a book or set of books," such "book or books, or copies thereof, shall be open to public inspection at reasonable times pursuant to such regulations as the commissioner may prescribe," and "Applications for abatement under this chapter shall, except in proceedings before the county commissioners, the appellate tax board or a court of the commonwealth, be open only to the inspection of the assessors, the commissioner, the deputies, clerks and assistants of either the assessors or the commissioner and such other officials of the commonwealth or of its political subdivisions as may have occasion to inspect such applications in the performance of their official duties."

The changes in G. L. (Ter. Ed.) c. 59, § 60, do not deprive the petitioners of their right to examine the records included in their request, except in so far, if at all, as the statute in its present form limits the scope of the permissible examination or inspection. See *Hurley* v. *Board of Public Welfare of Lynn*, 310 Mass. 285, 288. Whatever may have been true before the changes in the statute, the petitioners are not now entitled to examine or inspect applications for abatement. The petitioners, however, are entitled "at reasonable times," subject to such reasonable regulations,

if any, as the commissioner may have prescribed pursuant to said § 60 in its present form, to examine the records of abatements described in G. L. (Ter. Ed.) c. 59, § 60, as appearing in St. 1941, c. 209, whether or not such records are now "in a book or set of books provided for the purpose." And the petitioners are entitled to a writ of mandamus to enforce this right.

The respondent assessors make no contention that, upon the records in question being held to be public records, the writ of mandamus should not issue against all the assessors but should issue solely against the assessor who is clerk of the board.

*Order sustaining demurrer affirmed.*
*Writ of mandamus in conformity with*
*this opinion to issue.*