**Fay YEAGER, et al., individually, and on behalf of a class of all others similarly situated, Plaintiffs,**

**v.**

**HACKENSACK WATER COMPANY, etc., et al., Defendants.**

**Civ. A. No. 85–3195.**

United States District Court, D. New Jersey.

Aug. 14, 1985.

---

Lebson & Prigoff by Michael L. Prigoff, Englewood, N.J., on behalf of the American Civil Liberties Union of New Jersey, Newark, N.J., for plaintiffs.

Riker, Danzig, Scherer, Hyland & Perretti by Vincent J. Sharkey, Jr., James S. Rothschild, Jr., Edward K. DeHope, Morristown, N.J., for defendant Hackensack Water Co.

Irwin I. Kimmelman, Atty. Gen. of N.J. by George P. Cook, Deputy Atty. Gen., Trenton, N.J., for State defendants.

CLARKSON S. FISHER, Chief Judge.

This matter arises out of the drought emergency which has affected many New Jersey residents since early this year. Plaintiffs are residential customers of defendant Hackensack Water Company (Hackensack), living within the affected area.[1] Defendants are Hackensack; Governor Thomas H. Kean; Commissioner of Environmental Protection Robert E. Hughey; Drought Coordinator Richard T. Dewling; and the State of New Jersey. Hackensack is a private water company engaged in supplying water to 60 municipalities under terms and conditions approved by the New Jersey Board of Public Utilities.

On April 17, 1985, Governor Kean issued Executive Order No. 97 and on May 16, 1985, issued Executive Order No. 102. Through these orders Governor Kean declared a drought emergency, invoked certain emergency powers and directed the Commissioner of Environmental Protection, the Water Emergency Task Force and the Drought Coordinator "to take whatever steps are necessary and proper to alleviate the water supply emergency and to effectuate this Order." On May 17, 1985, Drought Coordinator Richard T. Dewling issued Administrative Order No. 6 which imposed mandatory water restrictions (50 gallons per resident per day) in a specified area and established procedures for admin-

---

1. The named plaintiffs who bring this action purport to represent a class of over 100,000 similarly situated customers of Hackensack. This group, however, has not been certified as a class pursuant to Fed.R.Civ.P. 23.

istration of the state's water rationing program.

Administrative Order No. 6 delegated the "primary monitoring and threshold enforcement function" to the individual water purveyors and to county and municipal governments. Further, the order authorized "the adoption and issuance of ordinances, rules, regulations, rate schedules and amendments thereto, inspection, enforcement and collection actions, and all other such actions as may be necessary to implement, administer and enforce the Water Rationing Program." As to residential customers, the order specifically directed that

[t]he number of permanent residents in each dwelling unit will determine the amount of water that each household will be allowed to use pursuant to the Plan. The individual water purveyors shall have the responsibility of determining the water allocation for each dwelling unit (household). This can be accomplished through the use of postcard census, bill analysis, spot checks, or other verification procedures. *The purveyor may require the names of individuals in each residential unit to verify the number.* Each purveyor shall alter its meter reading schedules as needed in order to assure compliance.

Where the purveyor cannot obtain information regarding the number of residents, the purveyor should assume, for purposes of surcharge, a single occupant for that household, and assess an allotment of 50 gallons for the dwelling unit. Customers are required to provide purveyor personnel with access to read meters in order to properly establish water usage. Purveyors who have been unable to obtain access to read the meter shall provide immediate written notice to the customer requiring the customer either to read the meter and submit written certification of its accuracy to the purveyor within five (5) days or to contact the purveyor within five (5) days to make an appointment for purposes of meter reading. If there is no reply from the customer, or if the purveyor is thereafter denied entry to read the meter, or to verify the number of household residents, that customer will be subject to penalty provided by law under N.J.S.A. 58:1A–1 et seq. and N.J.S.A.App. A:9–33 et seq. *The purveyor is hereby authorized and directed to provide appropriate officials with the information needed to carry out these enforcement actions in an expeditious fashion.*

Administrative Order No. 6 at 3–4 (emphasis added).

Pursuant to the state's directive, Hackensack has sought to ascertain its customers' social security numbers as well as the names of individual household members. To secure this information Hackensack prepared and sent a postcard mailer form to each of its residential customers. The explanation on the form provided in part

[w]e are required by the New Jersey State drought emergency task force to know by name how many permanent members there are in your household.

. . . .

The attached postcard is designed to provide us with that information. The rationing program requires the head of each residential household which has its own water meter to answer all questions, provide the names of all household members and send the prepaid postcard back to us by return mail.

. . . .

If there is no reply from the customer, or if we are denied access to read the meter or verify the number of household residents, you will be subject to penalty provided by law under N.J.S.A. 58:1A–1 et seq. and N.J.S.A.App. A:9–33 et seq.

Although the collection of social security numbers was not specifically authorized, the postcard mailer received by plaintiffs indicated that the failure to provide all requested information could result in civil or criminal sanction. In short, Hackensack was authorized by the state to take whatever action it deemed necessary, including the collection of its customers' social security numbers, to enforce the state's water

rationing program. Sufficiently onerous punitive measures were threatened to insure compliance with Hackensack's requests for information.

On June 25, 1985, plaintiffs filed a complaint alleging violations of their constitutionally and statutorily protected privacy rights. Specifically, plaintiffs claim that the information sought is protected by the Privacy Act of 1974, Pub.L. No. 93–579, section 7;[2] the first, fourth, fifth, ninth and fourteenth amendments to the United States Constitution; and article I of the New Jersey Constitution. The following day the court issued an order to show cause, returnable July 10, 1985, why defendants should not be restrained and enjoined from collecting the information they seek. On July 10 the parties agreed to a hearing on the merits of this case pursuant to Fed.R.Civ.P. 65(a)(2).

Plaintiffs have asked the court for an injunction

    (A) [e]njoining and restraining defendants, their agents, servants and employees from further soliciting the social security numbers ("SSNs") and names of household members from the plaintiffs and the class of residential customers of defendant, Hackensack Water Company;

    (B) [e]njoining and restraining defendants, their agents, servants and employees from disseminating by any means whatsoever, to any persons, the SSNs and the names of household members of plaintiffs and the class;

    (C) [r]equiring defendants to secure and safeguard the information gathered to date concerning the SSNs and the names of household members of plaintiffs and the class until the further Order of this Court;

    (D) [e]njoining defendant State of New Jersey from enforcing the civil and criminal penalties of N.J.S.A. 58:1A–1 *et. seq.* and N.J.S.A.App. A:9–33 *et seq.* against members of the class for failure to divulge their SSNs and/or the names of members of their households residing with them;

    (E) [r]equiring defendant, Hackensack Water Company to advise, within ten (10) days of the date hereof, those members of the class who have not returned their copy of the form attached as Exhibit B to the Verified Complaint that said residential customers need not disclose their SSNs nor the names of members of their households residing with them.

Memorandum of Law in Support of Plaintiffs' Application for a Preliminary Injunction (Plaintiffs' Mem.) at 1–2. Plaintiffs have not challenged the validity of the drought emergency or defendants' authority to establish a water rationing plan pursuant to their respective "emergency powers." Rather, plaintiffs' action is directed against defendants' alleged violations of the Privacy Act of 1974 and plaintiffs' constitutionally protected privacy rights.

Section 7 of the Privacy Act of 1974 provides

    (a)(1) It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.

    (2) the provisions of paragraph (1) of this subsection shall not apply with respect to—

        (A) any disclosure which is required by Federal statute, or

        (B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.

    (b) Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it.

---

**2.** 5 U.S.C. § 552a, note.

■ Although Hackensack is not a "Federal, State, or local government agency" as defined by the Act,[3] plaintiffs argue that by virtue of the state's executive and administrative orders Hackensack was deputized for the purpose of collecting the requested information. In certain situations, where there is a close nexus between the state and an action by a regulated entity, the action of the latter may be fairly treated as that of the state itself. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). This situation exists when a statutory scheme or executive directive compels, or at least provides the impetus for, the alleged proscribed activity. *Jackson v. Metropolitan Edison Co.*, 483 F.2d 754, 757 (3d Cir.1973), *aff'd*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). See also *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *State v. Droutman*, 143 N.J.Super. 322, 363 A.2d 1304 (Law Div.1976). While these and other similar cases have found "state action" in the context of alleged constitutional violations by regulated entities, the same principle is applicable here. In order to determine the applicability of the Privacy Act to the actions of Hackensack, the central question is whether its solicitation of social security numbers was sufficiently fostered or encouraged by the state as to be imputed to the state.

■ Given the information presented, it is clear that the primary motivation for Hackensack's attempt to obtain its customers' social security numbers came from Administrative Order No. 6. Hackensack has argued that the normal collection of its charges would be facilitated if it possessed customers' social security numbers. While this may be true, this is not the context within which the information was solicited. Hackensack's customers were informed that the requested information was required by the state's rationing program. On the basis of the state's significant involvement in Hackensack's actions, those actions will be imputed to the state. As an action of the state, the disclosure of social security numbers cannot be compelled without compliance with section 7(b) of the Privacy Act.

Section 7(b) of the Privacy Act has been construed to provide a private right of action for prospective relief to redress violations. See *Greater Cleveland Welfare Rights Org. v. Bauer*, 462 F.Supp. 1313, 1319–20 (N.D.Ohio 1978), and cases cited therein. "In the absence of a cause of action to enforce section 7(b) in the federal courts, said action would provide an empty right with no means of enforcement. Such would clearly frustrate the intent of Congress." *Greater Cleveland*, 462 F.Supp. at 1319–20.

Having concluded that section 7(b) creates an implied right of action, the court must determine whether the relief sought by plaintiff is consistent with the purposes of the Privacy Act. Plaintiffs have requested that defendants be enjoined from further solicitation or dissemination of its customers' social security numbers; that defendants be required to secure and safeguard the information already gathered; that the state be enjoined from enforcing the civil and criminal penalties of N.J.S.A. 58:1A–1 and N.J.S.A. App: A 9–33 against Hackensack's customers for failure to divulge their social security numbers; and that Hackensack be required to advise its customers who have not responded that they need not disclose their social security numbers.

The Privacy Act was designed to discourage improper uses of social security numbers and to allow individuals the opportunity to make an intelligent decision regarding its disclosure. The proposed use to which Hackensack would put its customers social security numbers is not *per se* impermissible. Defendants erred, however, by failing to comply with the disclosure requirements of the Act. Accordingly, the relief sought should be tailored to enable plaintiffs and others to make an informed, knowing and educated decision. At the same time, the

---

**3.** 5 U.S.C. § 552(e).

court believes that a significant amount of time and money would be wasted if it were to compel destruction of the information already gathered.

Therefore, the following relief—as to social security numbers only—is granted. Defendants must retroactively comply with the disclosure requirements of section 7(b) of the Privacy Act. Plaintiffs, and others from whom Hackensack has solicited social security numbers, must be informed of the voluntariness of the disclosure, the source of the authority for it, and the possible uses to which the disclosed number might be put. Until such time as this disclosure is accomplished, defendants are required to safeguard the information gathered and are enjoined from disseminating to anyone by any means the social security numbers provided without the disclosure required by section 7(b) of the Privacy Act. Furthermore, the State of New Jersey is enjoined from enforcing any civil or criminal penalties against anyone for failing to provide their social security number without the benefit of proper disclosure.

Plaintiffs also have challenged Hackensack's attempt to collect the names of the members of its customers' households. Administrative Order No. 6 specifically authorized Hackensack to collect "the name of individuals in each residential unit...." Plaintiffs argue that the request for this information, under threat of prosecution, "seriously chill[s] plaintiffs' associational rights and rights to be free from government interference under the First, Fourth, Fifth and Ninth amendments to the United States Constitution and under Article I of the New Jersey Constitution." [4] Plaintiffs' Mem. at 9. Using the same rationale discussed above, the court can imply "state action" from Hackensack's conduct sufficient to support plaintiffs' constitutional claims. *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 351, 95 S.Ct. at 454.

In order to prevail on their right-to-privacy claim, plaintiffs must show that the names of household members are within the constitutionally protected right of privacy and that the state has failed to demonstrate a compelling interest sufficient to permit an infringement of plaintiffs' rights. *Roe v. Wade,* 410 U.S. 113, 155, 93 S.Ct. 705, 727–28, 35 L.Ed.2d 147 (1973); *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). Generally, the right of privacy involves "those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *Roe,* 410 U.S. at 152, 93 S.Ct. at 726; *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). Traditionally, the activities embraced by this definition relate to the intimate facets of an individual's personal life (*e.g.,* marriage, procreation, contraception, family relationships, child rearing or education). *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1157, 47 L.Ed.2d 405 (1976). Arguably, the information sought could provide details of familial relationships and other intimate living arrangements. Although the parameters of the right of privacy are not delineated by the Constitution, it appears that the right to be free from compelled disclosure of the names of household members is within the right of privacy which has been recognized by the courts.

Having determined that defendants' conduct impinges upon a constitutionally protected right, the court must determine whether the actions are justified by a sufficiently compelling interest. Hackensack asserts that its request for the names of household members is necessary to satisfy its obligations to the state during the drought emergency (*i.e.,* determining the water allocation for each household and assessing and collecting water surcharges). According to Hackensack, "[t]he names of all individuals in each residential unit are

---

**4.** The language of article I, par. 1, has been interpreted to provide a right of privacy similar in substance and scope to the federal right. *Lehrhaupt v. Flynn,* 140 N.J.Super. 250, 356 A.2d 35 (App.Div.1976), *aff'd,* 75 N.J. 459, 383 A.2d 428 (1978). Accordingly, this opinion focuses on federal interpretations.

used by Hackensack to verify the number of water users. Without such verification, Hackensack will be unable to determine whether water rations are being exceeded. In addition, the requirement that names be disclosed should (a) reduce duplication, and (b) act as a deterrent to overstating of needs." Memorandum of Law of Defendant Hackensack in Opposition to Application at 11.

 Clearly, the state has a substantial interest in alleviating the water emergency affecting its residents and the means chosen are directed toward that end. Nonetheless, the Supreme Court has established that even a legitimate and substantial government purpose cannot be achieved by means which are unnecessarily broad and which tend to stifle fundamental personal liberties when the end might be more narrowly achieved. "The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same purpose." *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960).

In the case presented, it is obvious that there exist less intrusive methods by which defendants might achieve their objectives. Contrary to their assertions, defendants have shown no evidence that individuals, if asked, would intentionally misrepresent the number of household members. Furthermore, individual residents' names are not essential to the collection of surcharges. Any surcharges imposed would have to be assessed against water customers, not individual household members.

 Given the state's intrusion into a constitutionally protected aspect of plaintiffs' individual rights and in light of the apparent availability of less intrusive means to accomplish its objectives, the state's authorization of the collection of the names of individual household members as well as Hackensack's actions pursuant thereto must be declared unconstitutional. Accordingly, defendants are enjoined from any further solicitation of the names of plaintiffs' household members or of the household members of those similarly situated residential customers. Hackensack is to destroy all information gathered to date concerning the names of its customers' household members.

In conclusion, defendants are directed to comply with the disclosure requirements of the Privacy Act in their attempt to collect social security numbers. Defendants are constrained in their use of the numbers already collected until retroactive compliance is achieved. As to the collection of the names of household members, defendants' actions are declared unconstitutional. Defendants are restrained from any further attempts to gather this information and directed to destroy all such information previously collected. No costs.