JOHN DOE & others vs. REGISTRAR OF MOTOR VEHICLES.

No. 87-919.

Middlesex.   May 6, 1988. — September 30, 1988.

Present: GRANT, PERRETTA, & DREBEN, JJ.

*Registrar of Motor Vehicles,* Records. *Public Records. Fair Information
Practices Act,* Availability of remedy, Data subject. *Statute,* Construc-
tion. *Privacy. Words,* "Public records."

Information kept by the Registrar of Motor Vehicles concerning the social
security numbers, dates of birth, and physical heights of applicants for
motor vehicle operators' licenses, as contained in their applications for
the licenses, did not acquire status as a public record either by virtue
of G. L. c. 90, § 30, making public a record of all motor vehicle
applications and licenses (but not the applications or licenses themselves)
or by virtue of any statutory or decisional law existing prior to the
effective date of St. 1973, c. 1050, an act defining public records and
establishing prospectively certain exemptions from public record status.
[419-422]
Information contained in applications for motor vehicle operators' licenses,
which included applicants' social security numbers, dates of birth, and
physical heights, and which the Registrar of Motor Vehicles had made
available to anyone, for a fee, when considered under the general defi-
nition of "public records" as set forth in G. L. c. 4, § 7, Twenty-sixth,
and paragraph (c) thereof, was exempt from public record status as
"personal data," which, if disclosed, "may constitute an unwarranted
invasion of personal privacy," and thus was not subject to disclosure in
the absence of any showing by the Registrar that disclosure would serve
some public or governmental purpose. [422-428]
On an appeal from summary judgment in favor of the Registrar of Motor
Vehicles in an action by individuals seeking to prevent disclosure of
certain data, where this court concluded that information kept by the
Registrar concerning the social security numbers, dates of birth, and
physical heights of applicants for motor vehicle operators' licenses is,
under G. L. c. 4, § 7, Twenty-sixth, and paragraph (c) thereof, "personal
data" subject to disclosure only if the Registrar establishes that disclosure
would serve some public or governmental purpose, the Registrar, on
remand, was to have the opportunity to make the necessary showing;
he was also to have the opportunity to establish that, as to the social

security numbers, he had complied with the applicable notification pro-
visions of Federal law as contained in the Privacy Act of 1974. [428-429]

CIVIL ACTION commenced in the Superior Court Department
on June 10, 1985.

The case was heard by *William H. Welch*, J., on a motion
for summary judgment.

*Robert LeRoux Hernandez* (*Marian L. Klausner* with him)
for the plaintiffs.

*Countess C. Williams*, Assistant Attorney General, for the
Registrar of Motor Vehicles.

DREBEN, J.  For a fee,[1] the Registrar of Motor Vehicles
makes available to anyone, including businesses, the following
personal data contained in applications for motor vehicle
operators' licenses: the name, address, social security number,[2]
date of birth, and height of the applicant. At the argument,
the plaintiffs waived any claim that the disclosure of their
names and addresses violated G. L. c. 66A, § 2, with the
result that only the three remaining items are now in issue.
The plaintiffs, alleging that this information is "personal data"
which may not be disclosed under the Fair Information Practices
Act (FIPA), G. L. c. 66A,[3] brought this action under G. L.
c. 214, § 3B, seeking declaratory and other relief.

---

[1] An affidavit by the deputy registrar states that the fee is set by the
Executive Office for Administration and Finance. At oral argument, the
Registrar's counsel represented that the price covers the compiling costs
and that the sales are not made for profit.

[2] The license number, which is what the Registrar discloses, is usually
the applicant's social security number. On request, an applicant for a license
may be assigned a number other than his social security number.

[3] Section 1 of G. L. c. 66A, as appearing in St. 1977, c. 691, § 6, defines:
"Personal data" as "any information concerning an individual which, because
of name, identifying number, mark or description can be readily associated
with a particular individual; provided, however, that such information is
not contained in a public record, as defined in clause Twenty-sixth of section
seven of chapter four . . . ."

Section 2 of G. L. c. 66A, among other things, generally precludes a
holder of personal data from allowing others to have access to such data
unless such access is authorized by statute or regulation or unless the data
subject (see note 14, *infra*) consents.

A judge of the Superior Court on cross motions allowed the defendant's motion for summary judgment on the ground that the information was contained in a public record and that FIPA does not protect "personal data" contained in public records. Relying on *Direct-Mail Serv., Inc.* v. *Registrar of Motor Vehicles*, 296 Mass. 353, 354-355 (1937), which held that a person engaged in the business of selling information concerning automobile registrations may make copies "of all certificates and licenses of motor vehicles" issued by the Registrar, and also relying on G. L. c. 90, §§ 8 and 30 (the motor vehicle statutes), the judge ruled that these authorities accorded the material public record status and that it was not protected under FIPA. As to the plaintiffs' factual claims — he mentioned only one — he found that intrusive target advertising was not "immediate and present as distinguished from speculative"[4] and, quoting from the language of G. L. c. 214, § 1B, inserted by St. 1974, c. 193, § 1, found that being subjected to target advertising is not "an unreasonable, substantial, or serious interference" with the privacy of any of the plaintiffs.[5]

In our view the authorities cited by the judge do not confer upon the data public record status. We also conclude that when

---

[4] The plaintiffs allege that a new system was being put into effect by the defendant.

[5] In their complaint, the plaintiffs allege intrusion by target advertising and embarrassment and potential oppression by employers, credit agencies and others. Carmen Coe stated that she was involved in a close personal relationship with a younger man and the plaintiff Neil Noe that he had a liaison with an older woman. Both Coe and Noe claimed that they had heard derogatory comments concerning their relationships and they expressed fears of embarrassment, harassment, and interference with their relationships by reason of the release of their respective birth dates. They were especially fearful of ex-partners obtaining this information. (Oscar Wilde put it another way "No woman should ever be quite accurate about her age. It looks so calculating." The Importance of Being Earnest 162 [Methuen & Co. 27th ed. 1951].) John Doe, an unemployed individual older than forty years of age, expressed worries that potential employers would discriminate against him should they learn his age.

In his rulings on the motion for summary judgment, the judge considered only the effect of target advertising and did not consider the claims of any of the plaintiffs concerning other intrusive effects of disclosure.

the materials are considered under the more general definition of "public records" as set forth in G. L. c. 4, § 7, Twenty-sixth, and paragraph (c) thereof, as amended by St. 1977, c. 691, § 1,[6] the plaintiffs have shown a sufficient invasion of privacy to place upon the defendant the burden of justifying that invasion. See *Torres* v. *Attorney Gen.*, 391 Mass. 1, 10-11 (1984). Paragraph (c) exempts from public record status personal data, which, if disclosed, "may constitute an unwarranted invasion of personal privacy." Our focus on appeal on G. L. c. 4, § 7, Twenty-sixth, requires a balancing of the public and private interests involved. When the defendant relied on the motor vehicle statutes and on the *Direct-Mail* case, no balancing was required, and the defendant was not obliged to show on the record that disclosure is warranted. For this reason and also because the plaintiffs no longer seek protection for their names and addresses,[7] the defendant, if he so requests, is to be given an opportunity in the Superior Court to make an evidentiary showing that disclosure of social security number, date of birth, and height is warranted. If the plaintiffs' social security numbers are to be revealed, the registrar must also show that he has complied with a Federal statute not mentioned by the parties, namely § 7 of the Privacy Act of 1974, Pub. L. No. 93-579, 88 Stats. 1896, 1909, 5 U.S.C. § 552a note (1982).

---

[6] Clause twenty-sixth of G. L. c. 4, § 7, defines "Public records" as "all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within the following exemptions in that they are:

(c) personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy; . . ."

[7] There is a clear public purpose in providing injured members of the public with accurate information as to the owners and operators of automobiles and in making such data readily available. *Koley* v. *Williams*, 265 Mass. 601, 603 (1929); *Direct-Mail Serv., Inc.* v. *Registrar of Motor Vehicles*, 296 Mass. at 355. Whether more than names and addresses are needed by the public is the crucial question.

1. *Information not a public record under the motor vehicle statutes.* As indicated earlier, the judge ruled that the motor vehicle statutes make the material here in question a public record and, hence, not protected as "personal data" under FIPA. Although FIPA refers only to public records as defined in c. 4, § 7, Twenty-sixth, see note 6, *supra*, we agree with the judge that if any statute makes the record public, FIPA will not afford protection to the data.

We therefore look to the authorities cited by the judge, also taking into account § 6 of St. 1973, c. 1050. In.expanding the definition of "public records" in 1973, and in establishing certain exemptions, the Legislature provided in § 6,[8] that the exemptions were not to be construed to exempt any record which fell within the definition of a public record on the effective date of the act, July 1, 1974. See *Globe Newspaper Co. v. Boston Retirement Bd.*, 388 Mass. 427, 439 (1983).[9] Thus, if the material here sought had public record status under the motor vehicle statutes prior to July 1, 1974, it would not be protected under FIPA.

The relevant sections of c. 90 are §§ 8 and 30. Section 8 [10] governs the application for a license to operate a motor vehicle.

---

[8] Section 6 states: "The provisions of clause Twenty-sixth of section seven of chapter four of the General Laws, as amended by section one of this act, shall not be construed to exempt any record which was a public record on the effective date of this act from said clause Twenty-sixth."

[9] That case suggests that § 6 covers not only specific records in existence on July 1, 1974, but also covers the types of records which were then considered public.

[10] In relevant part, G. L. c. 90, § 8, as appearing in St. 1973, c. 361, § 1, provides:

"Application for a license to operate motor vehicles may be made by any person [exception for persons whose licenses have been revoked or suspended]; but before such a license is granted, the applicant shall pass such examination as to his qualifications as the registrar, without discriminating as to age, shall require; and no license shall be issued until the registrar or his authorized agent is satisfied that the applicant is a proper person to receive it; and, except as hereinafter provided, no such license shall be issued to any person under eighteen years of age. Each applicant shall submit with his application a birth, baptismal or school certificate or such other satisfactory evidence of his age as the registrar may require.

"A license or any renewal thereof issued to an operator shall expire on

That statute leaves the qualifications of the applicant, for the most part, to the Registrar and does not mention social security numbers or height. The references to age include a minimum age requirement and a direction to the Registrar to determine an applicant's qualifications "without discriminating as to age." Since 1973, submission of evidence of age has been required. Section 8 also describes, to some extent, the contents of a license. Age, social security number, and height are not mentioned, and again, for the most part, the Registrar is to determine the form and contents of the license.[11]

A sample of a current license application is included in the record.[12] The application seeks, inter alia, the following information: name, address, social security number, date of birth, height, sex, whether the applicant has been convicted of any crime within the last ten years other than a parking violation, whether the applicant has any physical disability that may prevent safe operation of a motor vehicle, whether he has been treated in the last five years for any heart disorder, epilepsy or fainting spells, alcoholism, drug dependency, or mental ill-

---

an anniversary of the operator's date of birth occurring more than twelve months but not more than forty-eight months after the effective date of such license.

"Applications for licenses shall be in such form as may be prescribed by the registrar."

[11] The description of the license, also contained in G. L. c. 90, § 8, as amended through St. 1986, c. 629, § 1, is as follows:

"To each licensee shall be assigned some distinguishing number or mark, and the licenses issued shall be in such form as the registrar shall determine. They may contain special restrictions and limitations. They shall contain a photograph of the licensee, the distinguishing number or mark assigned to the licensee, his name, his place of residence and address, a brief description of him for purposes of identification, and such other information as the registrar shall deem necessary.

"The photographs of licensees appearing on all operator's [*sic*] licenses shall be a straightforward looking view of the licensee with a distinctive license for persons under the age at which they can purchase alcoholic beverages as defined by section thirty-four of chapter one hundred and thirty-eight."

[12] The record also contains what appears to be an earlier (undated) application form which asks for weight, color of hair, color of eyes, place of birth as well as questions similar to those in the current application.

ness. In addition, the applicant is questioned concerning the suspension or revocation of prior licenses and whether he is currently taking medication for a mental, nervous, or physical disorder.

Section 30 of G. L. c. 90 makes certain information a public record and, in relevant part, provides:

> "A proper record of all applications and of all certificates and licenses issued shall be kept by the Registrar at his main office, and such records shall be open to the inspection of any person during reasonable business hours."

The same provision was in effect at the time of *Direct-Mail Serv., Inc.* v. *Registrar of Motor Vehicles*, 296 Mass. 353 (1937).

The section makes public a *record* of all applications and licenses but does not make the applications or the licenses themselves public documents. Indeed, as the judge found, much of the material contained in the application is not disclosed by the Registrar.

While the data sold may be considered less intrusive by the Registrar than the items not supplied, there is nothing in G. L. c. 90, § 30, which makes the items at issue — age, height, and social security number — public records. Compare *Dunhill* v. *Director, Dist. of Columbia Dept. of Transp.*, 416 A.2d 244 (D.C. App. 1980). We recognize that the *Direct-Mail Serv.* case, in holding that a person engaged in the business of selling information concerning registrations may make copies of "all certificates and licenses of motor vehicles," used broad language: "the registrar's records are fully impressed with the character of public records, and . . . the public generally has with respect to them all the privileges of examination and use which that status affords. G. L. (Ter. Ed.) c. 66, § 10." 296 Mass. at 354, 355.

The persons whose privacy interests were implicated were not before the court, and the broad language of the decision was written in an era prior to the advent of modern data processing technology which permits "the aggregation of pieces of

personal information into large central data banks." See Special Legislative Commission on Privacy, First Interim Report, 1975 House Doc. No. 5417, at 15, and at 10, making reference to automobile licenses, and also at 22, where the commission recommended that the use of social security numbers be restricted. We think it doubtful that the Legislature, in enacting § 6 of St. 1973, c. 1050, see note 8, *supra*, intended to incorporate, without subsequent judicial examination, all statements in earlier opinions no matter how old or how expansive. Cf. *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. at 441.

In any event, we do not consider the *Direct Mail Serv.* case dispositive of the question whether the items at issue were public records prior to 1974, the effective date of the expanded definition of "public records" and the establishment of certain exemptions. We have examined the record on appeal in that case, and nothing therein suggests that age, height, or social security information[13] was contained in the registry records at the time the case arose. See *Nantucket Conservation Foundation, Inc.* v. *Russell Management, Inc.*, 2 Mass. App. Ct. 868, 868-869 (1974); *O'Neill* v. *Mencher*, 21 Mass. App. Ct. 610, 613 (1986) (court may take judicial notice of the record of a case).

2. *Public record status under G. L. c. 4, § 7, Twenty-sixth.* Since we have concluded that neither c. 90, § 30, nor the law prior to July 1, 1974, accords the information relating to age, height, or social security public record status, we look to the general definition of "public records" set out in G. L. c. 4, § 7, Twenty-sixth. That statute, set forth in note 6, *supra*, makes all data received by the Registrar public records unless covered by one of the specific exemptions. The only relevant provision is (*c*), which excludes from public record status any "data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." As explained in *Torres* v. *Attorney Gen.*, 391 Mass.

---

[13] But see, as to social security information, *Ostric* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds,* 361 Mass. 459, 463 (1972).

at 9, the use of the word " 'unwarranted' . . . suggests a weighing of the circumstances of the data subject[14] — a balancing of the public's right to know as reflected in the Commonwealth's public records law, and the individual's right to protection against an unwarranted intrusion into his privacy." This is the only exemption "calling for a balancing of interests rather than for an objective determination of fact." *Ibid*.[15] Often, it calls for a factual determination to be made by the trial judge. See *Attorney Gen.* v. *Assistant Commr. of the Real Property Dept. of Boston*, 380 Mass. 623, 627 (1980); *Rural Housing Alliance* v. *United States Dept. of Agriculture*, 498 F.2d 73, 77 (D.C. Cir. 1974). Such a determination will be necessary if the defendant can provide some justification for disclosure. Otherwise, we think this is a case, like *Torres*, 391 Mass. at 10, where the plaintiffs have shown enough of an invasion of privacy[16] so that the burden of demonstrating that the invasion is warranted falls on the Registrar. Unless that burden is met, the plaintiffs will be entitled to judgment.

A number of factors leads us to this conclusion. It has been said, most often in the context of public employees, that the kinds of private facts that are considered exempt by paragraph

---

[14] Data subject" is defined in G. L. c. 66A, § 1 (as appearing in St. 1977, c. 691, § 6), as "an individual to whom personal data refers."

[15] See also the comment in the Senate report on the somewhat cognate Federal statute. "The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to government information. The application of this policy should lend itself particularly to those Government agencies where persons are required to submit vast amounts of personal data usually for limited purposes." S. Rep. No. 813, 89th Cong., 1st Sess. (1965), reprinted in Subcommittee on Administrative Practice and Procedure of the Senate Comm. on the Judiciary, Freedom of Information Act Source Book: Legislative Materials, Cases, Articles 44 (1974).

[16] That the judge in dismissing the plaintiffs' claims determined that there was not a violation of G. L. c. 214, § 1B, is not conclusive because G. L. c. 4, § 7, Twenty-sixth (*c*), sets a "standard more favorable to nondisclosure than G. L. c. 214, § 1B [which provides a right only against "unreasonable, substantial or serious interference with . . . privacy"]. *Pottle* v. *School Comm. of Braintree,* 395 Mass. 861, 867 n.6 (1985).

(*c*) are "intimate details of a highly personal nature". See *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn*, 374 Mass. 812, 818 (1978); *Attorney Gen.* v. *Collector of Lynn*, 377 Mass. 151, 157 (1979) (delinquent real estate taxpayers, not public employees); *Attorney Gen.* v. *Assistant Commr. of the Real Property Dept. of Boston*, 380 Mass. at 625-626; *Pottle* v. *School Comm. of Braintree*, 395 Mass. 861, 865-866 (1985); *Brogan* v. *School Comm. of Westport*, 401 Mass. 306, 309 (1987). But see *Department of State* v. *Washington Post Co.*, 456 U.S. 595, 600 (1982), suggesting, under Federal law, that the balancing exercise must be undertaken even for data which are "not normally regarded as highly personal" because such information "if contained in a 'personnel' or 'medical' file would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy." [17]

Whether age, height, or social security numbers, or any one or more of them, are such intimate details that their disclosure would be considered an invasion of privacy by "an individual of normal sensibilities," see *Attorney Gen.* v. *Collector of Lynn*, 377 Mass. at 157, is to be determined in light of "community mores and sensibilities". See *Rose* v. *Department of the Air Force*, 495 F.2d 261, 266 (2d Cir. 1974), aff'd, 425 U.S. 352 (1976); *Kestenbaum* v. *Michigan State Univ.*, 414 Mich. 510, 528 n.7 (1981). Both age, see *Multnomah County Medical Soc.* v. *Scott*, 825 F.2d 1410, 1415-1416 (9th Cir. 1987) (Medicare beneficiaries); and social security numbers, see *Swisher* v. *Department of the Air Force*, 495 F. Supp. 337, 340 (W.D. Mo. 1980), aff'd, 660 F.2d 369 (8th Cir. 1981), have been protected, the courts finding more than a minimal invasion of privacy by their disclosure. The Attorney General has also given an opinion that access to age should not be given by a board of registration because such information is exempt from mandatory disclosure under G. L. c. 4, § 7,

---

[17] The exemption language in the Federal Act, 5 U.S.C. § 552(b)(6) (1982), is "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

Twenty-sixth, (c). Rep. A.G., Pub. Doc. No. 12 at 162 (1977).

Even if the items here at issue are not considered "intimate details of a highly personal nature," the aggregate effect on the privacy of the total number of people whose data are disseminated weighs against disclosure. Although this is not a class action,[18] the harms to Massachusetts licensees which may result from disclosure are relevant on the public interest side of the balance. There is a negative public interest in placing the private affairs of so many individuals in computer banks available for public scrutiny.[19] Consideration of privacy interests on both sides of the balance cannot be avoided because the vast numbers of persons who hold motor vehicle licenses are themselves a significant part of the public. In large part theirs is the public interest which is being weighed.

The aggregation of facts included in the Registrar's releases intensifies the invasion of privacy. See *Aronson* v. *United*

---

[18] The plaintiffs below sought to make this proceeding a class action, but in view of his decision on the merits, the judge did not reach that question. Although the plaintiffs urge us to decide the issue, class action certification entails multiple decisions, some of them fact-based, and is a matter best left to the trial court if on remand the need should arise. See *Burns* v. *United States R.R. Retirement Bd.,* 701 F.2d 189, 191 (D.C. Cir. 1983). The number of persons who would be involved as plaintiffs and the potential punitive damages under G. L. c. 214, § 3B, are immense and could well militate against proceeding as a class. See *Carpenter* v. *Suffolk Franklin Sav. Bank,* 370 Mass. 314, 317 (1976). Moreover, courts may appropriately assume that public officials will act in accordance with their judicially defined duties, cf. *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 471 (1976); *Mayor of New Bedford* v. *City Council of New Bedford,* 13 Mass. App. Ct. 251, 257 (1982), even when the individuals involved are other than the plaintiffs in the original action.

[19] The motion judge, after holding the information to be a public record, advisedly suggested that the solution may be for the Legislature "to permit license holders to request the registry not to include their name" when selling lists. Despite the desirability of a legislative solution, we cannot defer the balancing exercise in this case.

Congress, in 5 U.S.C. § 552a(n) (1982), has provided: "An individual's name and address may not be sold or rented by an agency unless such action is specifically authorized by law. This provision shall not be construed to require the withholding of names and addresses otherwise permitted to be made public."

*States Dept. of Housing & Urban Dev.*, 822 F.2d 182, 186 (1st Cir. 1987). The Registrar, on request, see G. L. c. 90, § 30, quoted at 8, *supra,* will disclose information as to automobile registrations. When an individual's street address and make and year of automobile are known, much may be gleaned concerning his or her financial condition. If age is also factored in, such a person, particularly one of advanced years, may become the target of those who would like to share in his or her wealth.[20] See *Aronson, supra.* Although the authorities are in conflict,[21] some courts protect even names and addresses, when combined with financial or other data. E.g., *ibid.* (limitation of disclosure of lists of mortgagors entitled to receive shares of surplus under National Housing Act); *Wine Hobby USA, Inc.* v. *United States Int. Rev. Serv.*, 502 F.2d 133 (3d Cir. 1974) (upholding refusal to disclose the names and addresses of persons registered with the United States Bureau of Alcohol, Tobacco, and Firearms to produce wine for family use in the Mid-Atlantic region); *Minnis* v. *United States Dept. of Agriculture,* 737 F.2d 784, 788 (9th Cir. 1984), cert. denied, 471 U.S. 1053 (1985) (upholding refusal to disclose names and addresses of persons who applied for permits to travel on the Rogue River during the regulated season); *HMG Marketing Assoc.* v. *Freeman,* 523 F. Supp. 11, 15 (S.D.N.Y. 1980) (upholding refusal to disclose mailing list of names and addresses of persons wishing to purchase silver dollars). Including

---

[20] The defendant permits the purchaser to specify what records he is seeking from the registry. As stated in an informational release of the defendant, a purchaser may select: "a) All records whose date of birth is between 1950 and 1975, b) All records with city of Boston, Medford, Allston etc., and/or anything else that can be determined from the information contained within the license file."

[21] A number of cases permit disclosure of names and addresses. E.g., *Getman* v. *NLRB,* 450 F.2d 670 (D.C. Cir. 1971) (names and addresses of employees eligible to vote in certain union representation elections); *Kurzon* v. *Dept. of Health & Human Serv.*, 649 F.2d 65 (1st Cir. 1981) (names and addresses of unsuccessful applicants for National Cancer Institute research grants); *United States Dept. of the Air Force, Scott Air Force Base* v. *Fed. Labor Relations Authy.*, 838 F.2d 229 (7th Cir. 1988) (home addresses of nonunion members). See also *Pottle* v. *School Comm. of Braintree,* 395 Mass. at 866 (names and addresses of public school employees).

ages and social security numbers gives the purchaser significant information and may permit him access to additional files. "Data available on a single tape can be combined with data on other tapes in such a way as to create new, more comprehensive banks of information." *Kestenbaum* v. *Michigan State Univ.*, 414 Mich. at 531.

Also relevant to our decision is the plaintiffs' expectation of privacy. See *Attorney Gen.* v. *Collector of Lynn*, 377 Mass. at 157; *Torres*, 391 Mass. at 9. While the plaintiffs, so their counsel stated, are willing to disclose the material to the Registrar on the theory that such information may facilitate the administration of his duties, they, as alleged in affidavits, consider it far more intrusive for the material to be used, perhaps repeatedly, where no public purpose is served.[22] Cf. *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. at 441 n.22. That the information may be derived elsewhere reduces the expectation of privacy, *Attorney Gen.* v. *Collector of Lynn*, 377 Mass. at 158; *Torres*, 391 Mass. at 8, but is not dispositive. The Registrar urges that the material is available under G. L. c. 51, §§ 4 & 6.[23] Using that route to obtain the data would require inquiry of many sources, a far more cumbersome procedure; hence the present disclosure may still be viewed as a significant invasion. See *Kestenbaum* v. *Michigan State Univ.*, 414 Mich. at 533. Cf. *Department of State* v. *Washington Post Co.*, 456 U.S. at 602-603 n.5. Moreover, courts may protect the same information from disclosure as an unwarranted invasion of privacy in one context but not in another. *Torres*, 391 Mass. at 9. In sum, we conclude the plaintiffs have shown an invasion of privacy which requires a showing of some public or governmental purpose in disclosure.

Before considering the justifications offered by the Registrar to support the public's right to know, we emphasize that our

---

[22] Although the "commercial motivations [of the seeker of the information] are irrelevant for determining the *public interest served* by disclosure; they do, however, suggest [some of the] ways in which *private interests* could be *harmed* by disclosure." See *Aronson* v. *United States Dept. of Housing & Urban Dev.*, 822 F.2d at 186.

[23] We do not decide whether the Registrar's view is correct.

cases require the public to be treated "collectively," without intent to differentiate "among the purposes for which information is requested." *Allen* v. *Holyoke Hosp.*, 398 Mass. 372, 381 (1986), quoting from *Torres*, 391 Mass. at 10. That the use intended is commercial may not be considered in determining the *public* interest, although this fact may bear on the way in which private interests can be harmed. See note 22, *supra*, citing *Aronson*, 822 F.2d at 186.

The Registrar in his motion for summary judgment sought to rely on an affidavit of the first deputy general counsel of the Department of Public Welfare to show a need for disclosure of licensees' social security numbers. Material authorized to be collected by one agency of government may not, however, in the absence of statute, achieve public record status by reason of the needs of another agency of government. Cf. G. L. c. 66A, § 2 (*c*), which precludes a holder of personal data from allowing any other *agency* or individual from having access to personal data unless authorized by statute or otherwise. Only the Registrar's own governmental purpose in having the items available to the public, see note 7, *supra*, can properly be considered.

The needs of the Department of Public Welfare,[24] if present statutes are insufficient, should be presented to the Legislature. Disclosure by the Registrar to that department can be authorized without making the social security number of each holder of a Massachusetts license a public record available to all persons for all purposes. Cf. G. L. c. 167B, § 14, inserted by St. 1981, c. 530, § 2, a Legislative indication that the use of social security numbers is to be restricted, at least in the banking context.

The disclosure of the social security numbers of the plaintiffs presents an additional problem. See *Cleveland Welfare Rights Organization* v. *Bauer*, 462 F. Supp. 1313, 1320 (N.D. Ohio 1978); *Doe* v. *Sharp,* 491 F. Supp. 346, 349-350 (D. Mass. 1980); *Yeager* v. *Hackensack Water Co.,* 615 F. Supp. 1087,

---

[24] Under 42 U.S.C. § 405(c)(2)(C)(i) (1982) welfare departments are permitted in administering general public assistance to require any individual who is "affected by such law" to furnish his social security number.

1092 (D.N.J. 1985). Use of social security numbers is permissible by the Registrar, see 42 U.S.C. § 405(c)(2)(c)(i) (1982). See also *Ostric* v. *Board of Appeals on Motor Vehicle Liab. Policies & Bonds*, 361 Mass. 459, 463 (1972). Section 7 of the Privacy Act of 1974, 5 U.S.C. § 552a note (1982), however, requires the Registrar, in requesting such numbers, to inform the individual in advance "whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited and what uses will be made of it." An affidavit of one plaintiff avers that he was not so informed, and the record strongly suggests that most licensees also were uninformed. No individualized notice was given, see *Cleveland Welfare Rights Organization* v. *Bauer*, 462 F. Supp. at 1320; *Doyle* v. *Wilson*, 529 F. Supp. 1343, 1348-1350 (1982), and the license application does not reveal the information required by the Federal statute. The Registrar, in answers to the plaintiffs' requests for admissions, stated that he did not have enough information to know whether a sign was posted at each registry office informing applicants for licenses that they could be assigned different numbers. Unless on remand the Registrar shows compliance with the statute (as well as justification for disclosure), social security numbers may not be released.

As to age and height,[25] the Registrar has supplied no justification whatsoever for disclosure. Despite the failure of the Registrar to show on the record a public or governmental need for disclosure of the three items, we think, as indicated earlier, he should be given an opportunity to do so. The shift in focus on appeal from the motor vehicle statutes where no balancing is needed to the balancing required under paragraph (*c*) of G. L. c. 4, § 7, Twenty-sixth, as well as the plaintiffs' waiver of their claims of privacy as to names and addresses, warrants this procedure.

---

[25] The privacy interest in height is, of course, far less than in age or social security numbers, as the plaintiffs themselves conceded at oral argument. Nevertheless, the defendant should show some justification for the disclosure. See *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. at 441 n.22. In this case the Registrar may not rely on G. L. c. 66, § 10 (*c*), as appearing in St. 1973, c. 1050, § 3, for a presumption that "the record sought is public." See *Torres,* 391 Mass. at 10.

Accordingly, the judgment is vacated and the case is remanded to the Superior Court. If the defendant, within sixty days from the date of the rescript, files an affidavit alleging that he has evidence that the disclosures are warranted, a judge of the Superior Court shall conduct further proceedings consistent with this opinion.[26] If the defendant does not file such an affidavit, a judgment declaring that the material is not a public record shall be entered upon the expiration of the sixty-day period. Additional relief consistent with this opinion may also be provided.

*So ordered.*

---

[26] If, after hearing, the judge should find a public interest in disclosure, the Registrar or the judge may choose to devise a procedure whereby an individual can inform the Registrar that he does not want a record pertaining to himself to be used for marketing and advertising and have that fact noted in the record in a way that will assure that the individual's preference will be communicated to any user of the record for direct-mail marketing or solicitation. This procedure was recommended by the Privacy Protection Study Commission, established by the 95th Congress, in its final report at 153 (1977). The commission urged that "[s]pecial attention . . . be paid to Department of Motor Vehicle records."