Dear Mr. Landry:
This office is in receipt of your request for an opinion of the Attorney General relative to R.S. 35:17 as amended by Acts 230 and 322 of 1991 in light of Section 7 of the Privacy Act of 1974. Succinctly, the amended statute requires that notaries include in acts affecting immovable property the social security number or employer identification number of the parties to the document in the body of the act. Your questions are as follows:
 1. Is a notary, when performing his official function, covered by Section 7 of the Privacy Act of 1974;
 2. Assuming a notary is covered by Section 7, must he comply with Section 7(b), if he solicits a social security number from an individual to be used as outlined in R.S. 35:17, as amended;
 3. Assuming a notary is covered by Section 7, if an individual refuses to divulge his social security number to the notary, may the notary close the act without complying with R.S. 35:17; and, what, if any, penalty can be imposed on the notary if he knowingly violates R.S. 35:17;
 4. Assuming the notary is covered by Section 7, may a notary, with impunity, refuse to close an act if an individual refuses to divulge his social security number;
 5. If the notary may not do so with impunity, what, if any, liability does the notary face from private citizens who refuse to disclose their social security number;
 6. If the notary obtains the individual's social security number from a third party, such as a bank, may the notary include that social security number in the act without complying with Section 7(b);
 7. Must the third party, as a bank, comply with Section 7 under Yeager v. Hackensach Water Co., 615 F. Supp. 1087 (D.N.J. 1985);
 8. In order to comply with Section 7(b) what must a notary tell the appearer from whom he solicits a social security number;
 9. If a notary is sued by an individual for injunctive relief for violation of Section 7(a), for refusing to close an act involving that individual, who refuses to disclose his social security number, is the state responsible for defending the notary; and,
 10. If a notary is sued by an individual for damages for violation of Section 7(a), for refusing to close an act involving that individual who refuses to divulge his social security number, must the state indemnify the notary?
Pursuant to Act 230 and 321 of 1991 the legislature has provided that "notaries shall insert in their acts by which immovable property is conveyed, transferred, leased, or encumbered, the social security number or employer identification number of the parties thereto. The social security number or employer identification number shall be included in the body of the act and shall accompany the recitation of the person's full name and permanent mailing address. Failure to recite the social security number as required herein shall not affect the validity of the act."
Pertinent to your inquiries are the provisions of Section 7 of the Privacy Act of 1974 which broadly prohibits federal, state and local governmental agencies from penalizing individuals in any way because of his failure to reveal his social security number upon request. It is provided "it shall be unlawful for any Federal, State or local governmental agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number." Additionally, it is provided that "any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it."
In enacting Section 7, Congress sought to curtail the expanding use of social security numbers by governmental agencies, and to eliminate the threat to individual privacy and confidentiality of information posed by common numerical identifiers. There was the recognition that widespread use of a standard identification number in collecting information could lead to the establishment of a national data bank or similar informational system which could store data gathered from individuals from many sources and facilitate surveillance. Thus, Congress, saw a need for federal legislation to restore to the individual the option to refuse to disclose his social security number. Doyle v. Wilson, 529 F. Supp. 1341 (Dist. Del. 1982).
In regard to your first question we recognize that R.S. 35:1 requires that a notary be appointed by the governor with the consent of the Senate, and this office has previously recognized that a notary is an appointed state officer. Atty. Gen. Op. No. 81-43, 79-605. However, we do not believe it was envisioned or intended that a notary when performing his function be covered by Section 7 of the Privacy Act wherein it applies to "any federal, State or local government agency".
We reach this conclusion in part on the basis that we do not believe the notary is an "agency" that confers a "right, benefit, or privilege" as set forth in the Act without distorting the intent of these terms.
Also, we place reliance upon the reasoning in Ehm v. National R.R. Passenger Corp., 732 F.2d 1250 (5th Cir. 1984) wherein the court ruled that Amtrak was not subject to the Privacy Act. The amended definition of "agency" contained in the "Freedom of Information Act" was held to apply to the Privacy Act. Although the principle question was whether Amtrak was a "Government controlled corporation" within the definition of "agency" in light of the Rail Passenger Service Act, the thoughts are applicable to a decision with regard to notaries.
We find it pertinent that the court observed that Amtrak's day-to-day operations were not subject to close government supervision, and did not bring them within the definition of the term "agency". The court concluded the degree of financial control by the government over Amtrak was not sufficient to negate Amtrak's character as a "private, nonfederally-chartered corporation".
Applying this reasoning, despite the recognition that notaries are appointed by the Governor and confirmed by the Senate, we do not find they fall within the purview of the Privacy Act as a state agency.
We find the reasoning in Bernal v. Fainter, 467 U.S. 216 (1984), pertinent wherein the United States Supreme Court ruled the provision unconstitutional that provided a notary public must be a citizen of the United States. In reaching that conclusion the Court considered the "political function" exception that excludes aliens from positions intimately related to government. Despite that notaries are designated public officers by the Texas Constitution, the Court concluded a notary's duties "hardly implicate responsibilities that go to the heart of representative government." The "political function" exception was found to apply to positions vested with policy making or broad discretion in the execution of public policy that requires routine exercise of authority over individuals. The court stated, "Neither of these characteristics pertains to the functions performed by Texas notaries."
A similar question was presented in Jii v. Rhodes, 577 F. Supp. 1128
(S.D. Ohio 1983) in that Ohio required a notary be a citizen. The court pointed out that notaries were appointed by the Governor upon a certificate from a Judge, and recognized they were public officials. However, it was concluded the position of notary public did not fall within the governmental function exception. The court recognized some state functions are so bound up with the operation of the state as a government entity to permit the exclusion from those functions of aliens, but felt the functions of a notary, while somewhat formal or official, were not of such importance to the state or sovereign so as to be deemed to go to the heart of the concept of democratic self-government. It was felt the state's interest in setting the qualifications for notaries was analogous to the interest in licensing any of the common occupations or professions. The court concluded that notary public did not involve "discretionary decision making, or execution of policy which substantially affects members of the political community". The functions were deemed ministerial in nature and could not reasonably be deemed to be governmental or sovereign functions.
While these cases are obviously not directly in point, we find the reasoning persuasive to our conclusion.
Having reached the conclusion that the notary is not covered by Section 7, and is free from the dictates of the provisions, this makes the remainder of your questions moot, inasmuch as they are based upon the application of the Privacy Act to notaries.
However, we think it is pertinent to state it is the conclusion of this office that despite the directive that the social security number be included in the act, the notary may close an act without including the social security number of the individual who refuses to disclose the same. The rationale for this conclusion is the fact that the statutory provision, while requiring the recitation, provides the failure "to recite the number as required herein shall not affect the validity of the act." We feel this recognizes there will be instances when individuals will refuse to disclose their social security numbers.
Inasmuch as we have concluded the notary may close the act without the social security number of a party to the act who refuses to divulge the same, no need would arise to obtain the number from a third party or for the notary to refuse to close the act. However, where there has been a refusal, it would appear wise to have the notary include in the act a declaration that the individual refused to disclose the social security number, although we find no requirement in the law for such a declaration.
We hope this sufficiently answers your questions, but if we can be of further assistance, please do not hesitate to contact.
Sincerely your,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: BARBARA B. RUTLEDGE Assistant Attorney General